**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| **CHINOS HOLDINGS, INC.** *et al.*, | ) | **Case No. 20-32181-KLP** |
| Debtors.[1] | ) | **(Jointly Administered)** |
| | ) | |
| | ) | |
| **CAASTLE INC.,** | ) | |
| Movant, | ) | |
| **v.** | ) | **Relief from Stay** |
| **MADEWELL INC.,** | ) | |
| Respondent. | ) | |
| | ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

### NOTICE

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one on this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

**If you do not wish the Court to grant the relief sought in this motion, or if you want the court to consider your views on this motion, then on or before July 20, 2020 (the "Objection Deadline"), which is three (3) days before the hearing scheduled on this matter, you must file a written response explaining your position with the Court and serve a copy on the movant.  Unless a written response is filed and served by the Objection Deadline, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.**

**If you mail your response to the Court for filing, you must mail it early enough so that the Court will receive it on or before the Objection Deadline.**

**ATTEND THE PRELIMINARY HEARING SCHEDULED TO BE HELD ON THURSDAY, JULY 23, 2020 AT 11:00 A.M. IN THE UNITED STATES BANKRUPTCY COURT, RICHMOND DIVISION, 701 EAST BROAD STREET, ROOM 5100, RICHMOND, VIRGINIA 23219.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Chinos Holdings, Inc. (3834); Chinos Intermediate Holdings A, Inc. (3301); Chinos Intermediate, Inc. (3871); Chinos Intermediate Holdings B, Inc. (3244); J. Crew Group, Inc. (4486); J. Crew Operating Corp. (0930); Grace Holmes, Inc. (1409); H.F.D. No. 55, Inc. (9438); J. Crew Inc. (6360); J. Crew International, Inc. (2712); J. Crew Virginia, Inc. (5626); Madewell Inc. (8609); J. Crew Brand Holdings, LLC (7625); J. Crew Brand Intermediate, LLC (3860); J. Crew Brand, LLC (1647); J. Crew Brand Corp. (1616); J. Crew Domestic Brand, LLC (8962); and J. Crew International Brand, LLC (7471). The Debtors' corporate headquarters and service address is 225 Liberty St., New York, NY 10281.

Robert M. Marino, Esq. VSB #26076
Redmon, Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, Virginia 22314-3143
Phone: 703-879-2676 (direct)
Facsimile: 703-684-5109
Email: rmmarino@rpb-law.com
Counsel for CaaStle Inc.

CaaStle Inc. f/k/a Gwynnie Bee Inc. ("CaaStle"), a sublandlord and creditor herein, by and

through the undersigned counsel, pursuant to 11 U.S.C. §362(d), Fed. R. Bankr. P. 4001(a), and Local

Rules 4001(a)-1 and 9013-1, respectfully requests the entry of an order granting CaaStle relief from the

automatic stay to enforce all of its contractual and state law rights to possession with respect to certain

leased commercial premises more particularly described below, and in support thereof states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§1334 and

157(a), 11 U.S.C. §362(d) and Federal Rules of Bankruptcy Procedure 4001(a) and 9014.  This is a core

proceeding pursuant to 28 U.S.C. §157(b)(2)(G).  Venue is proper in this district and division pursuant to

28 U.S.C. §§1408 and 1409.

### FACTUAL BACKGROUND

2.      On May 4, 2020 (the "Petition Date"), Madewell Inc. ("Madewell" or "Debtor") filed a

voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, *et

seq.* (the "Bankruptcy Code"), thereby commencing Case No. 20-32191-KLP (the "Bankruptcy Case") in

this Court.  By *Order* entered in the Bankruptcy Case on May 5, 2020 (Docket No. 7), the Bankruptcy

Case has been consolidated for procedural purposes with sixteen other affiliated cases under the above-

captioned jointly administered case. The Debtor and its affiliated debtor entities remain in the control and

possession of their respective assets and business as debtors in possession pursuant to sections 1107 and

1108 of the Bankruptcy Code.

3.      CaaStle, as tenant, leases commercial office space from Factory Owners LLC in a

building located at 30-30 47th Avenue, Long Island City, New York (the "Building), which includes a

portion of the fourth floor of the Building consisting of approximately 6,306 square feet of space known

as Suite 460 ("Suite 460"), a portion of the fifth floor of the Building consisting of approximately 12,702

square feet of space known as Suite 540 ("Suite 540"), and an additional portion of the fourth floor of the

Building consisting of approximately 1,055 rentable square feet space known as Suite 470 ("Suite 470")

-2-

(collectively, the "Premises"), pursuant to the terms of an *Agreement* of *Lease* dated May 15, 2015, by

and between Factory, as landlord, and CaaStle, as tenant, as amended by (i) a *First Amendment to Lease*

dated March 15, 2016, and (ii) a *Second Amendment to Lease* dated June 28, 2017 (collectively, the

"Prime Lease"). The term of the *Prime Lease* expired by its own terms on May 31, 2020, and has not

been extended.

4.        Pursuant to the terms of a *Sublease* dated September 19, 2020 (the "Sublease"), by and

between CaaStle, as sublandlord, and Madewell, as subtenant, Madewell agreed to sublease Suites 460

and 540 (collectively, the "Subleased Premises") from CaaStle. A true copy of the *Sublease* is attached

and incorporated by reference as Exhibit A, and true and complete copies of the *Prime Lease*, including

the original document and its amendments, are attached as exhibits to the *Sublease*.

5.        Under the terms of the *Sublease*, Madewell was obligated to pay CaaStle monthly base

rent of $47,520 (the "Base Rent") and a variable monthly amount as additional rent to pay for electricity

and any other operating expenses related to the operation of the Subleased Premises (the "Additional

Rent"). All rent was due and payable on the fifth (5th) day of each calendar month. *Sublease* at Section

5.A. through 5.D. CaaStle was also entitled to collect a late charge of five percent (5%) plus additional

interest for any rent not timely paid. *Sublease* at Section 6.

6.        CaaStle is presently holding a security deposit from Madewell in the amount of $95,040

(the "Security Deposit") as security for Madewell's performance of the terms, conditions and provisions

of the Sublease. *Sublease* at Section 5.E.

7.        The term of the *Sublease* commenced on September 15, 2019 and expired by its own

terms—contemporaneously with the expiration of the *Prime Lease*—on May 31, 2020 (the "Expiration

Date").  Section 21 of the *Sublease* provides that if the subtenant remains in possession of the Subleased

Premises after the Expiration Date, then (i) subtenant shall be deemed a tenant at will, (ii) subtenant shall

continue to pay Base Rent and Additional Rent at an increased rate calculated at 150% of the original

rates (the "Holdover Rate"), (iii) there shall be no renewal or extension of the Sublease by operation of

law, (iv) the tenancy at will may be terminated upon thirty days written notice from the sublandlord, and (v) subtenant shall be liable to sublandlord for all damages suffered and reasonable expenses incurred on account of such holdover. *Sublease* at Section 21.A. Furthermore, following the Expiration Date, subtenant is required to surrender possession of, and remove all property situated in, the Subleased Premises.

8.      Prior to the Petition Date, Madewell was in default under the *Sublease* for failure to pay the Base Rent due for March and April 2020 ($95,040) and the Additional Rent due for January through April 2020 ($6,893), for a total of $101,933 (the "Pre-Petition Balance").

9.      Subsequent to the Petition Date and prior to the Expiration Date, Madewell has failed to pay the Base Rent and Additional Rent due for May, in the aggregate amount of $48,907.12.

10.      Notwithstanding the Expiration Date, Madewell has continued to occupy the Subleased Premises and has not provided any information as to when it intends to vacate and surrender said premises to CaaStle. Under the terms of the *Sublease*, after the Expiration Date, Base Rent and Additional Rent continue to accrue at the Holdover Rate for so long as Madewell continues to occupy the Subleased Premises as a tenant at will. In turn, and by virtue of Madewell's ongoing holdover occupancy, CaaStle continues to incur additional rent obligations to Factory under the *Prime Lease*.[2]

11.      While the automatic stay imposed by section 362(a) of the Bankruptcy Code upon the commencement of Madewell's Bankruptcy Case may not necessarily prohibit CaaStle from issuing a thirty-day notice of termination of Madewell's post-Expiration Date tenancy at will and taking possession of the Subleased Premises, it nevertheless likely applies to prohibit CaaStle from (i) forcibly removing any items of personal property belonging to Madewell, and (ii) applying the Security Deposit to pay down the Pre-Petition Balance.

---

[2] CaaStle reserves the right to pursue allowance and payment of an administrative expense claim in this case for the Base and Additional Rent accruing at the original and holdover rates after the Petition Date in connection with the Sublease and the Subleased Premises.

12.     Out of an abundance of caution, therefore, CaaStle seeks relief from the automatic stay in this case so as to permit it to (i) terminate and take possession of the Subleased Premises, (ii) forcibly remove and dispose of any tangible personal property remaining in the Subleased Premises after it takes possession, and (iii) apply the Security Deposit in its possession to pay down the Pre-Petition Balance owed under the *Sublease*.

## ARGUMENT

13.     As a preliminary matter, the automatic stay imposed by section 362(a) of the Bankruptcy Code arguably does not apply.  Section 362(b)(10) expressly provides that "the filing of a petition…does not operate as a stay—

> (10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property.

11 U.S.C. §362(b)(10).  In the instant case, as noted above, the *Sublease* expired on the Expiration Date in accordance with its own terms.  As such, the automatic stay is arguably inapplicable to CaaStle's efforts to obtain possession of the Premises. However, from June 1, 2020 until the present, the Debtor has occupied the Subleased Premises as a "tenant at will" subject to termination on thirty days' notice from CaaStle.  This holdover status creates some uncertainty regarding the application of the exception set forth in section 362(b)(10).  As such, CaaStle has determined to exercise prudence and refrain from exercising its rights to retake possession absent an order confirming that the stay does not apply in this case or lifting and terminating the stay to the extent that it does apply.

14.     In seeking relief from the automatic stay, section 362(d) of the Bankruptcy Code provides that:

> (d)     On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying or conditioning such stay –
>
> > (1)     for cause, including a lack of adequate protection of an interest in property of such party in interest; …

11 U.S.C. § 362(d)(1).  "Cause" is expressly defined to include a lack of adequate protection.  However, a

lack of adequate protection is not the exclusive basis for "cause" for relief from the stay.  See 11 U.S.C.

§102(3) ("'includes' and 'including' are not limiting").  Hence, section 362(d)(1) leaves "courts to

consider what constitutes 'cause' based on the totality of the circumstances in each particular case." *In re

Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

15.     Because the *Sublease* has expired on the Expiration Date in accordance with its own

terms, it is no longer considered property of the bankruptcy estate.  11 U.S.C. §541(b)(2) (nonresidential

real property lease which terminates at the expiration of the stated term of such lease before the

commencement of the case is not property of the bankruptcy estate). More importantly, expiration renders

it impossible for the Debtor to assume the *Sublease*, since the lease is no longer "unexpired," as expressly

required by the Bankruptcy Code.  11 U.S.C. §365(a) ("the trustee, subject to the court's approval, may

assume or reject any ... *unexpired* lease of the debtor.") (Emphasis added). *See In re Memphis Friday's

Associates*, 88 B.R. 830, 833 (W.D. Tenn. 1988) (lease which terminates prepetition may not be assumed

by debtor in possession); *In re Gisc, Inc*., 130 B.R. 346, 348 (Bankr. M.D. Fla. 1991) (same).

16.     Even assuming *arguendo* that the expired *Sublease* could be assumed because of the

tenancy at will created at expiration, (i) at best, all that could be assumed is a month to month holdover

tenancy which could be terminated by CaaStle on thirty days' notice at any time subsequent to

assumption, and (ii) it is highly unlikely that the Debtor would want to cure the substantial monetary

defaults that are described above, as required by section 365(b)(1) of the Bankruptcy Code. 11 U.S.C.

§365(b)(1) (where lease is in default, debtor must cure or provide adequate assurance that it will promptly

cure defaults).

17.     The foregoing legal and practical limitations on the Debtor's ability to assume the

*Sublease* establish cause to lift the automatic stay so as to permit CaaStle to exercise his contractual and

state law rights to terminate and obtain possession of the Premises.  *See In re Premier Automotive

Services, Inc.*, 343 B.R. 501, 520 (Bankr. D.Md. 2006) (Landlord granted relief from stay where, "[t]o the

extent that the debtor's month to month tenancy is considered an executory lease, it is a mere allusion

because the debtor's assumption of it will not provide permanent relief."); *In re Masterworks, Inc.*, 94

B.R. 262, 265 (Bankr. D. Conn. 1988) ("It is well settled that where the debtor will be unable to assume a

lease pursuant to Code § 365(a), there is cause for relief from the automatic stay.); *In re Q.T., Inc.*, 118

B.R. 47 (Bankr. E.D. Va. 1990) (pre-petition termination of lease constitutes cause for granting relief

from automatic stay to permit landlord to reenter and take possession of lease property).

18.    To the extent that the automatic stay is lifted and terminated, CaaStle should also be

permitted to remove and dispose of any personal property remaining in the Subleased Premises after the

holdover tenancy is terminated and CaaStle takes possession. CaaStle will afford the Debtor a reasonable

opportunity to remove any of its personal property, but the automatic stay should not prohibit CaaStle

from disposing of said property if the Debtor fails to act in a reasonable time frame after its holdover

tenancy is terminated.

19.    With respect to the Security Deposit, there should be no dispute that the Pre-Petition

Balance exceeds the amount of the Security Deposit so that there is no equity remaining for the Debtor. In

the absence of any equity in the Security Deposit, the Court should lift the automatic stay to immediately

permit CaaStle to apply the Security Deposit to pay down the Pre-Petition Balance. 11 U.S.C. §362(d)(2).

20.    CaaStle requests that the Court waive the fourteen day stay imposed by Bankruptcy Rule

4001(a)(3) so as to permit it to immediately take all actions necessary to enforce its rights to terminate the

holdover tenancy, take possession, remove any remaining personal property, and apply the Security

Deposit to pay down the Pre-Petition Balance.

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons, CaaStle respectfully requests that this Court enter an

Order (i) lifting and terminating the automatic stay so as to permit it to exercise its contractual and state

law rights to possession with respect to the Subleased Premises, including its rights to terminate the

holdover tenancy, take possession, remove any remaining personal property, and apply the Security

Deposit to pay down the Pre-Petition Balance and (ii) granting such other and further relief as the Court

deems just and proper.

Date: July ___, 2020

Respectfully submitted,
/s/ Robert M. Marino
Robert M. Marino, VBN 26076
Redmon Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314
(703) 684-2000
Fax 703-684-5109
Counsel for CaaStle Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _____ day of July 2020, I caused a true copy of the foregoing *Motion*, with Exhibit and proposed Order attached, to be served electronically through the ECF system upon all persons designated to receive electronic notice thereunder, as reflected on the Master Service List maintained in this case, and by email to the following parties in accordance with the requirements of that certain *Order Establishing Certain Notice, Case Management and Administrative Procedures* entered herein on May 5, 2020 (Docket No. 109).

Debtors:
Chinos Holdings, Inc.
225 Liberty Street, 17th Floor
New York, New York 10281
Attn: Maria Di Lorenzo

Counsel to the Debtors:
Weil Gotshal & Manges, LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C.
    Ryan Preston Dahl
    Candace M. Arthur
    Daniel Gwen
Email: ray.schrock@weil.com
    ryan.dahl@weil.com
    candace.arthur@weil.com
    daniel.gwen@weil.com

Co-counesl to the Debtors:
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Attn: Tyler P. Brown
    Henry P. (Toby) Long, III
    Nathan Kramer
Email: tpbrown@huntonAK.com
    hlong@huntonHK.com
    nkramer@huntonHK.com

Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Attn: Kenneth N. Whitehurst, III
Email: USTPRegion04.RH.ECF@usdoj.gov

Counsel for the Official Committee of Unsecured Creditors:
Hirschler Fleischer, P.C.
2100 East Cary Street
The Edgeworth Building
Richmond, VA 23223
Attn: Robert S. Westermann
Email: rwestermann@hf-law.com

Counsel for the DIP Agent:
Seward & Kissel, LLP
One Battery Park Plaza
New York, New York 10004
Attn: Gregg S. Bateman
Email: bateman@sewkis.com

/s/ Robert M. Marino
Robert M. Marino