# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

-------------------------------------------------------------x
                                                             :
In re                                                        :          **Chapter 11**
                                                             :
**CHINOS HOLDINGS, INC., *et al.*,**                         :          **Case No. 20–32181 (KLP)**
                                                             :
                                            Debtors.[1]      :          **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

## AMENDED JOINT PREARRANGED CHAPTER 11 PLAN
## OF REORGANIZATION OF CHINOS HOLDINGS, INC. AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**          **HUNTON ANDREWS KURTH LLP**
Ray C. Schrock, P.C. (admitted *pro hac vice*)   Tyler P. Brown (VSB No. 28072)
Ryan Preston Dahl (admitted *pro hac vice*)      Henry P. (Toby) Long, III (VSB No. 75134)
Candace Arthur (admitted *pro hac vice*)         Nathan Kramer (VSB No. 87720)
Daniel Gwen (admitted *pro hac vice*)            Riverfront Plaza, East Tower
767 Fifth Avenue                                 951 East Byrd Street
New York, New York 10153                         Richmond, Virginia 23219
Telephone: (212) 310-8000                        Telephone:  (804) 788-8200
Facsimile: (212) 310-8007                        Facsimile:   (804) 788-8218

*Attorneys for Debtors and Debtors in Possession*   *Attorneys for Debtors and Debtors in Possession*

Dated:  August 9, 2020
        Richmond, Virginia

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Chinos Holdings, Inc. (3834); Chinos Intermediate Holdings A, Inc. (3301); Chinos Intermediate, Inc. (3871); Chinos Intermediate Holdings B, Inc. (3244); J. Crew Group, Inc. (4486); J. Crew Operating Corp. (0930); Grace Holmes, Inc. (1409); H.F.D. No. 55, Inc. (9438); J. Crew Inc. (6360); J. Crew International, Inc. (2712); J. Crew Virginia, Inc. (5626); Madewell Inc. (8609); J. Crew Brand Holdings, LLC (7625); J. Crew Brand Intermediate, LLC (3860); J. Crew Brand, LLC (1647); J. Crew Brand Corp. (1616); J. Crew Domestic Brand, LLC (8962); and J. Crew International Brand, LLC (7471).  The Debtors' corporate headquarters and service address is 225 Liberty St., New York, NY 10281.

# TABLE OF CONTENTS

**Page**

**ARTICLE I**      DEFINITIONS, INTERPRETATION AND CONSENTS............................................. 1

   A.     Definitions ............................................................................................................ 1

   B.     Interpretation; Application of Definitions and Rules of Construction ..................................... 13

   C.     Reference to Monetary Figures ........................................................................... 13

   D.     Controlling Document ........................................................................................ 13

**ARTICLE II**      ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS........................... 14

   2.1.     Administrative Expense Claims.......................................................................... 14

   2.2.     Professional Fee Claims...................................................................................... 14

   2.3.     DIP Claims........................................................................................................... 15

   2.4.     Priority Tax Claims............................................................................................. 15

   2.5.     Payment of Statutory Fees ................................................................................. 16

**ARTICLE III**      CLASSIFICATION OF CLAIMS AND INTERESTS. ............................................. 16

   3.1.     Classification in General..................................................................................... 16

   3.2.     Formation of Debtor Groups for Convenience Only ......................................... 16

   3.3.     Summary of Classification................................................................................... 16

   3.4.     Special Provision Governing Unimpaired Claims ............................................. 17

   3.5.     Elimination of Vacant Classes ........................................................................... 17

   3.6.     Voting Classes; Presumed Acceptance by Non-Voting Classes........................ 17

**ARTICLE IV**      TREATMENT OF CLAIMS AND INTERESTS....................................................... 18

   4.1.     Priority Non-Tax Claims (Class 1) ..................................................................... 18

   4.2.     Other Secured Claims (Class 2).......................................................................... 18

   4.3.     ABL Facility Claims (Class 3)............................................................................ 18

   4.4.     Term Loan Secured Claims (Class 4) ................................................................. 19

   4.5.     IPCo Notes Claims (Class 5) .............................................................................. 20

   4.6.     Ongoing Trade Claims (Class 6-A) .................................................................... 20

   4.7.     Other General Unsecured Claims (Class 6-B) .................................................... 20

   4.8.     Intercompany Claims (Class 7)........................................................................... 21

   4.9.     Section 510(b) Claims (Class 8) ......................................................................... 21

   4.10.     Intercompany Interests (Class 9) ........................................................................ 22

4.11.    Existing Holdings Preferred Equity (Class 10-A)............................................................. 22

4.12.    Existing Holdings Equity (Class 10-B).......................................................................... 22

**ARTICLE V        MEANS FOR IMPLEMENTATION.** ............................................................. 22

5.1.    Sources of Funding for Plan Distributions...................................................................... 22

5.2.    General Corporate Authority ........................................................................................ 23

5.3.    Exit ABL Facility........................................................................................................... 23

5.4.    Conversion of DIP Claims; New Term Loans ................................................................ 24

5.5.    Backstop Commitments ................................................................................................. 25

5.6.    Authorization and Issuance of New Common Equity and the New Warrants................. 25

5.7.    Continued Corporate Existence ..................................................................................... 25

5.8.    Exemption from Securities Laws.................................................................................... 26

5.9.    Cancellation of Existing Securities and Agreements ..................................................... 27

5.10.    Cancellation of Liens .................................................................................................... 27

5.11.    Officers and Boards of Directors .................................................................................. 28

5.12.    Certain Employee, Director, and Officer Matters.......................................................... 28

**ARTICLE VI        DISTRIBUTIONS.** ............................................................................................ 28

6.1.    Distributions Generally................................................................................................. 28

6.2.    Distribution Record Date .............................................................................................. 29

6.3.    Date of Distributions..................................................................................................... 29

6.4.    Distribution Agent ........................................................................................................ 29

6.5.    Rights and Powers of Distribution Agent ...................................................................... 29

6.6.    Expenses of Distribution Agent .................................................................................... 30

6.7.    Postpetition Interest ...................................................................................................... 30

6.8.    Delivery of Distributions .............................................................................................. 30

6.9.    Distributions after Effective Date ................................................................................. 30

6.10.    Unclaimed Property ...................................................................................................... 30

6.11.    Time Bar to Cash Payments .......................................................................................... 31

6.12.    Manner of Payment under Plan...................................................................................... 31

6.13.    Satisfaction of Claims ................................................................................................... 31

6.14.    Fractional Stock and New Warrants .............................................................................. 31

6.15.    Minimum Cash Distributions........................................................................................ 32

6.16.    Maximum Distributions and Rights of Reimbursement ................................................. 32

6.17.    Setoffs and Recoupments.............................................................................................. 32

6.18.   Allocation of Distributions between Principal and Interest ............................................. 32

6.19.   Withholding and Reporting Requirements ........................................................................ 32

6.20.   Hart-Scott-Rodino Antitrust Improvements Act ............................................................... 33

**ARTICLE VII    PROCEDURES FOR DISPUTED CLAIMS.** ............................................................. 33

7.1.    Allowance of Claims ......................................................................................................... 33

7.2.    Disputed Claims Process ................................................................................................... 33

7.3.    Objections to Claims .......................................................................................................... 34

7.4.    Estimation of Claims ......................................................................................................... 34

7.5.    Adjustment to Claims Without Objection .......................................................................... 34

7.6.    Disallowance of Certain Claims ........................................................................................ 34

7.7.    Amendment to Claims ........................................................................................................ 34

7.8.    Late Filed Claims ............................................................................................................... 35

7.9.    No Distributions Pending Allowance ................................................................................. 35

7.10.   Distributions after Allowance ............................................................................................ 35

7.11.   Claim Resolution Procedures Cumulative ......................................................................... 35

**ARTICLE VIII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** ................................... 35

8.1.    General Treatment .............................................................................................................. 35

8.2.    Determination of Assumption Disputes and Deemed Consent ......................................... 36

8.3.    Claims Based on Rejection of Executory Contracts and Leases ....................................... 37

8.4.    Contracts and Leases Entered into After the Petition Date ............................................... 37

8.5.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ........... 38

8.6.    Survival of the Debtors' Indemnification Obligations ...................................................... 38

8.7.    Insurance Policies .............................................................................................................. 38

8.8.    Intellectual Property Licenses and Agreements ................................................................ 38

8.9.    Employee Compensation and Benefits .............................................................................. 39

8.10.   Assignment ......................................................................................................................... 39

8.11.   Reservation of Rights ......................................................................................................... 39

**ARTICLE IX    CONDITIONS PRECEDENT** ..................................................................................... 40

9.1.    Conditions Precedent to Confirmation of the Plan ........................................................... 40

9.2.    Conditions Precedent to Effective Date ............................................................................ 40

9.3.    Satisfaction or Waiver of Conditions Precedent ............................................................... 41

9.4.    Effect of Failure of a Condition ........................................................................................ 41

**ARTICLE X**      EFFECT OF CONFIRMATION OF PLAN. ................................................ 42

10.1.    Vesting of Assets ........................................................................................ 42

10.2.    Binding Effect............................................................................................. 42

10.3.    Compromise and Settlement of Claims, Interests, and Controversies .............................. 42

10.4.    Discharge of Claims and Termination of Interests ............................................ 42

10.5.    Term of Injunctions or Stays........................................................................ 43

10.6.    Injunction .................................................................................................. 43

10.7.    Releases .................................................................................................... 44

10.8.    Exculpation ............................................................................................... 46

10.9.    Retention of Causes of Action/Reservation of Rights ...................................... 46

10.10.   Ad Hoc Committee and Indenture Trustee Fees............................................... 46

**ARTICLE XI**      RETENTION OF JURISDICTION. ...................................................... 47

11.1.    Retention of Jurisdiction............................................................................. 47

11.2.    Courts of Competent Jurisdiction ................................................................ 48

**ARTICLE XII**     MISCELLANEOUS PROVISIONS......................................................... 48

12.1.    Substantial Consummation of the Plan ......................................................... 48

12.2.    Expedited Determination of Taxes ............................................................... 49

12.3.    Dissolution of Committees ......................................................................... 49

12.4.    Exemption from Certain Transfer Taxes ....................................................... 49

12.5.    Modifications and Amendments................................................................... 49

12.6.    Revocation or Withdrawal of Plan............................................................... 50

12.7.    Severability of Plan Provisions.................................................................... 50

12.8.    Governing Law .......................................................................................... 51

12.9.    Time .......................................................................................................... 51

12.10.   Dates of Actions to Implement the Plan ....................................................... 51

12.11.   Immediate Binding Effect............................................................................ 51

12.12.   Successors and Assigns ............................................................................... 51

12.13.   Entire Agreement ........................................................................................ 51

12.14.   Exhibits to Plan .......................................................................................... 51

12.15.   Notices ....................................................................................................... 52

iv

Chinos Holdings, Inc.; Chinos Intermediate Holdings A, Inc.; Chinos Intermediate, Inc.; Chinos Intermediate Holdings B, Inc.; J. Crew Group, Inc.; J. Crew Operating Corp.; Grace Holmes, Inc.; H.F.D. No. 55, Inc.; J. Crew Inc.; J. Crew International, Inc.; J. Crew Virginia, Inc.; Madewell Inc.; J. Crew Brand Holdings, LLC; J. Crew Brand Intermediate, LLC; J. Crew Brand, LLC; J. Crew Brand Corp.; J. Crew Domestic Brand, LLC; and J. Crew International Brand, LLC, as debtors and debtors in possession (each, a "**Debtor**" and, collectively, the "**Debtors**") propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of title 11 of the United States Code.

## ARTICLE I        DEFINITIONS, INTERPRETATION AND CONSENTS.

**A.    Definitions.** The following terms shall have the respective meanings specified below:

1.1    **ABL Agent** means Bank of America, N.A., in its capacity as administrative and collateral agent for the ABL Lenders.

1.2    **ABL Credit Agreement** means the *Credit Agreement*, dated March 7, 2011, as amended, restated, amended and restated, modified, or supplemented from time to time through the Petition Date.

1.3    **ABL Facility** means that certain asset-based lending facility pursuant to the ABL Credit Agreement.

1.4    **ABL Facility Claims** means all "Obligations," as defined in the ABL Credit Agreement, as of the Effective Date, including any accrued but unpaid interest, costs, fees, issued and outstanding letters of credit, cash management obligations, guarantees and indemnities.

1.5    **ABL Facility Documents** means the ABL Credit Agreement and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, fee letters, and other security documents.

1.6    **ABL Lenders** means the "Secured Parties" as defined in the ABL Credit Agreement and any other Entity that becomes a "Secured Party" under the ABL Facility from time to time in accordance with the ABL Credit Agreement, each in their capacity as such.

1.7    **Ad Hoc Committee** means the ad hoc committee composed of certain holders of Term Loan Claims, IPCo Notes Claims, Existing Holdings Preferred Equity, and Existing Holdings Equity, each in their capacity as such, represented by PJT Partners LP, Milbank LLP, and Tavenner & Beran, PLC.

1.8    **Ad Hoc Committee Fees** means, collectively, to the extent not previously paid, all outstanding, reasonable and documented fees and expenses of any professional retained on behalf of the Ad Hoc Committee (whether incurred directly or on their behalf and regardless of whether such fees and expenses are incurred before or after the Petition Date), including PJT Partners LP, Milbank LLP, and Tavenner & Beran, PLC.

1.9    **Administrative Expense Bar Date** means the date that is 60 days after the Effective Date, which will be the deadline by which parties seeking payment of Administrative Expense Claims must file a motion seeking Allowance of such claim, submit a proof of claim, or otherwise request in writing payment of such claims from the Debtors or Reorganized Debtors.

1

1.10    **Administrative Expense Claim** means any Claim for costs or expenses of administration of any of the Chapter 11 Cases incurred after the Petition Date and through the Effective Date under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code that have not already been paid by the Debtors, including (a) any actual and necessary costs and expenses of preserving the Estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases, including for the acquisition or lease of property or an interest in property or the performance of services, and (d) any compensation and reimbursement of expenses to the extent allowed under sections 330 or 503 of the Bankruptcy Code.

1.11    **Affiliates** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.12    **Allowed** means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection or dispute has been determined in favor of the holder of the Claim or Interest by a Final Order, (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or the Reorganized Debtors, (d) that is included in the Schedules, but is not listed as unliquidated, contingent, or disputed; (e) as to which the liability of the Debtors or the Reorganized Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction, (f) is not Disputed, or (g) is expressly allowed under the Plan; *provided*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

1.13    **Assumption Dispute** means an objection or dispute relating to assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code, including to any Cure Obligation or adequate assurance of future performance under an Executory Contract or Unexpired Lease to be assumed, which objection or dispute has been timely filed or interposed in accordance with the Plan and applicable law and has not been withdrawn or determined by a Final Order.

1.14    **Avoidance Action** means any action commenced, or that may be commenced, before or after the Effective Date pursuant to chapter 5 of the Bankruptcy Code including sections 544, 545, 547, 548, 549, 550, or 551.

1.15    **Backstop Commitment Letter** means the backstop commitment letter dated May 3, 2020, as amended from time to time, executed by the Backstop Parties, providing for, among other things, the DIP Obligations and the New Term Loans.

1.16    **Backstop Parties** means the "Backstop Term Lenders" as defined in the Backstop Commitment Letter, each in their capacity as such.

1.17    **Backstop Premium** means a fee in an amount equal to $40,000,000, which will be paid on the Effective Date to the Backstop Parties in accordance with the Backstop Commitment Letter in the form of New Common Equity, which equity will be subject to dilution by New Common Equity issuable upon exercise of the New Warrants, issued pursuant to the Management Incentive Plan, and otherwise issued after the Effective Date.

1.18    **Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as now in effect or hereafter amended from time to time, as applicable to the Chapter 11 Cases.

2

1.19    **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Virginia having subject matter jurisdiction over the Chapter 11 Cases and, to the extent of any reference withdrawal made under section 157(d) of title 28 of the United States Code, the District Court having subject matter jurisdiction over the Chapter 11 Cases under section 157 of title 28 of the United States Code.

1.20    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.21    **Benefit Plans** means (a) each "employee benefit plan," as defined in section 3(3) of the Employee Retirement Income Security Act of 1974, as amended, and (b) any other pension, retirement, bonus, incentive, health, life, disability, group insurance, vacation, holiday and fringe benefit plan, program, contract, or arrangement (whether written or unwritten) maintained, contributed to, or required to be contributed to, by the Debtors for the benefit of any of its current or former employees or independent contractors, other than those that entitle employees to, or that otherwise give rise to, Interests, or consideration based on the value of Interests, in the Debtors, which shall be assumed by the Debtors on the Effective Date.

1.22    **Causes of Action** means any and all actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of setoff, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, claims, Avoidance Actions, counterclaims, cross-claims, affirmative defenses, and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, or assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, whether arising under the Bankruptcy Code or any applicable nonbankruptcy law, based in whole or in part upon any act or omission or other event occurring before the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.  Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtors or their Estates, Causes of Action shall include (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or equity, (b) claims (including Avoidance Actions) pursuant to section 362, and chapter 5 of the Bankruptcy Code including sections 510, 542, 543, 544 through 550, or 553, and (c) claims and defenses such as fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

1.23    **Chapter 11 Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and styled *In re Chinos Holdings, Inc., et al.*, Ch. 11 Case No. 20-32181 (KLP) (Jointly Administered).

1.24    **Chinos Holdings** means Chinos Holdings, Inc., as debtor or debtor in possession, as the context requires.

1.25    **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.26    **Class** means a category of holders of Claims or Interests as set forth in Article III pursuant to section 1122(a) of the Bankruptcy Code.

1.27    **Collateral** means any asset of the Estates that is subject to a Lien securing the payment or performance of a Claim to the extent provided by section 506 of the Bankruptcy Code, which Lien is valid,

3

perfected and enforceable, and has not been avoided under the Bankruptcy Code or applicable nonbankruptcy law.

1.28    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order within the meaning of Bankruptcy Rules 5003 and 9021.

1.29    **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.30    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.31    **Consenting Support Parties** has the meaning set forth in the Transaction Support Agreement.

1.32    **Creditor** has the meaning set forth in section 101(10) of the Bankruptcy Code.

1.33    **Creditors' Committee** means the statutory committee of unsecured creditors appointed in these Chapter 11 Cases.

1.34    **Cure Obligation** means the amount of cash or other property the Debtors must distribute (as the parties may agree or the Bankruptcy Court may order), as necessary, to (a) cure a monetary default by the applicable Debtor under an Executory Contract or Unexpired Lease as required by section 365(b)(1) of the Bankruptcy Code , and (b) permit the applicable Debtor to assume or assume and assign such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

1.35    **Definitive Documents** has the meaning set forth in the Transaction Support Agreement.

1.36    **DIP Agent** means Wilmington Savings Fund Society, FSB in its capacity as administrative and collateral agent under the DIP Loan Documents.

1.37    **DIP Claims** means all Claims arising under or related to the DIP Loan Documents, including any accrued but unpaid interest, costs, fees, guarantees and indemnities.

1.38    **DIP Credit Agreement** means the postpetition credit agreement among the Debtors and the DIP Lenders as approved by the DIP Order.

1.39    **DIP Facility** means the debtor-in-possession financing used to fund the operations of the Debtors during the pendency of these Chapter 11 Cases under the terms set forth in the DIP Loan Documents.

1.40    **DIP Lenders** means the lenders party under the DIP Credit Agreement and any other Entity that becomes a lender under the DIP Facility from time to time in accordance with the DIP Credit Agreement, each in their capacity as such.

1.41    **DIP Loan Documents** means, collectively, the DIP Credit Agreement and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, fee letters, and other security documents.

1.42    **DIP Obligations** has the meaning set forth in the DIP Order.

1.43    **DIP Order** means the Interim DIP Order or the Final DIP Order, as applicable.

1.44    **Disallowed** means, with respect to any Claim or Interest, that such Claim or Interest (a) has been determined by a Final Order or specified in a provision of the Plan not to be Allowed, (b) has been agreed to by the holder of such Claim or Interest and the applicable Debtor to be equal to $0 or to be expunged, (c) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed pursuant to either the Bankruptcy Code, any Final Order of the Bankruptcy Court or otherwise, (d) is not listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed pursuant to either the Bankruptcy Code, any Final Order of the Bankruptcy Court, or otherwise.

1.45    **Disclosure Statement** means the disclosure statement in respect of the Plan, as may be amended from time to time as approved by the Bankruptcy Court.

1.46    **Disputed** means, with respect to a Claim or Interest, that (a) such Claim or Interest is neither Allowed nor Disallowed, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code or (b) the Debtors or any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtors dispute only a portion of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute and Disputed as to the balance of such Claim.

1.47    **Distribution Agent** means any Entity in its capacity as a distribution agent under Article VI of the Plan (including a Reorganized Debtor that acts in such capacity).

1.48    **Distribution Record Date** means, except as otherwise provided in the Plan or designated by the Bankruptcy Court, the Effective Date.

1.49    **DTC** means the Depository Trust Company, a limited-purpose trust company organized under the New York State Banking Law.

1.50    **Effective Date** means the date after entry of the Confirmation Order on which all conditions to the effectiveness of the Plan set forth in Article IX of the Plan have been satisfied or waived in accordance with the terms of the Plan.

1.51    **Eligible Holder** means the IPCo Noteholders and Term Lenders that are qualified institutional buyers or accredited institutional investors eligible to participate in the DIP Facility and the New Term Loan.

1.52    **Employee Arrangements** means all employee compensation plans, Benefit Plans, employment agreements, offer letters, or award letters to which any Debtor is a party.

1.53    **Entity** means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, person (as defined in section 101(41) of the Bankruptcy Code), or other entity (as defined in section 101(15) of the Bankruptcy Code.

1.54    **Estates** means the estates of the Debtors created under section 541 of the Bankruptcy Code.

1.55    **Exchange Act** means the Securities Exchange Act of 1934, as amended.

WEIL:\97578913\4\54457.0008

1.56    **Exculpated Parties** means, collectively and, in each case, in their capacities as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Creditors' Committee, (iv) the Consenting Support Parties, (v) the ABL Agent and the ABL Lenders, (vi) the Term Agent and the Term Lenders, (vi) the Indenture Trustees and the IPCo Noteholders, (vii) the Backstop Parties, (viii) the DIP Lenders, (ix) the DIP Agent, (x) the New Term Lenders, (xi) the New Term Agent, (xii) the Sponsors, and (xiii) the Related Parties for each of the foregoing.

1.57    **Executory Contract** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.58    **Existing Holdings Equity** means all Interests in Chino's Holdings, Inc. as of the Petition Date except for Existing Holdings Preferred Equity.

1.59    **Existing Holdings Preferred Equity** means the Series A Preferred Stock and Series B Preferred Stock, each issued by Chinos Holdings.

1.60    **Exit ABL Agent** means the administrative and collateral agents under the Exit ABL Facility, solely in their capacity as such.

1.61    **Exit ABL Credit Agreement** means that certain senior secured revolving credit agreement, dated as of the Effective Date (as it may be amended, restated, amended and restated, supplemented, or modified from time to time, solely in accordance with the terms thereof), which will be filed as part of the Plan Supplement.

1.62    **Exit ABL Facility** means the senior secured asset-based revolving credit facility to be provided to certain of the Reorganized Debtors on the Effective Date on the terms and subject to the conditions set forth in the Exit ABL Credit Agreement.

1.63    **Exit ABL Facility Documents** means, collectively, the Exit ABL Credit Agreement and each other agreement, security agreement, pledge agreement, collateral assignment, notice, mortgage, control agreement, guarantee, certificate, document or instrument executed or delivered in connection with the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, amended and restated, supplemented or replaced from time to time.

1.64    **Exit Facility Documents** means, collectively, the New Term Documents and the Exit ABL Facility Documents.

1.65    **Exit ABL Lenders** means the lenders under the Exit ABL Credit Agreement and any other Entity that becomes a lender under the Exit ABL Facility from time to time in accordance with the Exit ABL Credit Agreement.

1.66    **Final DIP Order** means the order entered by the Bankruptcy Court, among other things, approving the DIP Facility and the Debtors' use of cash collateral on a final basis (Docket No. 447).

1.67    **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or

6

rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.68    **General Unsecured Claim** means any Claim as of the Petition Date that is neither secured by a Lien nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court; *provided* that a General Unsecured Claim does not include (a) any Intercompany Claim, (b) any deficiency claims with respect to the IPCo Notes, or (c) any Section 510(b) Claim.

1.69    **Governmental Entity** means the United States and any State (including the District of Columbia and Puerto Rico), Commonwealth, District, Territory, municipality (including a political subdivision or public agency or instrumentality of a State), foreign state, or a department, agency, or instrumentality of the foregoing.

1.70    **Group, Inc.** means J. Crew Group, Inc.

1.71    **Impaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a) and 1124 of the Bankruptcy Code.

1.72    **Incremental Debt Equity** means New Common Equity issued after the Effective Date in connection with the "Fixed Component" as defined in the New Term Credit Agreement.

1.73    **Indentures** means, collectively, the IPCo Indentures and the indenture for the 7.75%/8.50% Senior PIK Toggle Notes due 2022

1.74    **Indenture Trustees** means the IPCo Trustee and indenture trustee for the 7.75%/8.50% Senior PIK Toggle Notes due 2022.

1.75    **Indenture Trustee Fees** means, collectively, to the extent not previously paid, all outstanding, reasonable and documented fees and expenses of the Indenture Trustees (including, without limitation, attorneys' and agents' fees, expenses, and disbursements) to the extent permitted under the applicable indenture regardless of whether such fees were incurred before or after the Petition Date.

1.76    **Intercompany Claim** means any Claim held by a Debtor against another Debtor as of the Petition Date.

1.77    **Intercompany Interest** means an Interest in a Debtor held by another Debtor as of the Petition Date.

1.78    **Interests** means any equity interest in a Debtor immediately before the Effective Date, including, all issued, unissued, authorized or outstanding shares of stock, preferred stock, membership interests, other instruments evidencing an ownership interest, or equity security in any of the Debtors, whether or not transferable, and any option, warrant, right to purchase or acquire any such interests at any time, or any other interest that is exercisable, convertible or exchangeable into equity of a Debtor, contractual or otherwise, including equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors to acquire any such interests in a Debtor.

1.79    **Interim DIP Order** means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection to Prepetition Secured Parties, (V) Modifying Automatic stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (Docket No. 84).

1.80    **IPCo Debtors** means J. Crew Brand, LLC, J. Crew Brand Corp., J. Crew Brand Intermediate, LLC, J. Crew International Brand, LLC, and J. Crew Domestic Brand, LLC, each in their capacity as obligor under or guarantor of the obligations under the IPCo Indentures, as applicable.

1.81    **IPCo Indentures** means the two *Indentures* dated July 13, 2017 pursuant to which the IPCo Notes were issued, as amended from time to time.

1.82    **IPCo Intercreditor Agreement** means the *Intercreditor Agreement* dated July 13, 2017 between U.S. Bank National Association, as collateral agent for the New Notes Secured Parties (as defined in the IPCo Intercreditor Agreement) and U.S. Bank National Association, as collateral agent for the New Private Placement Notes Secured Parties (as defined in the IPCo Intercreditor Agreement).

1.83    **IPCo Noteholders** means the holders of IPCo Notes, each in their capacity as such.

1.84    **IPCo Notes** means the 13% Senior Secured Notes due 2021 and the 13% Senior Secured New Money Notes due 2021, issued under the respective IPCo Indentures.

1.85    **IPCo Notes Claims** means all Claims as of the Petition Date arising under or related to the IPCo Indentures and the IPCo Notes, including any deficiency claims and all accrued but unpaid interest, costs, fees, and indemnities.

1.86    **IPCo Trustees** means, collectively, U.S. Bank National Association in its capacity as collateral agent and trustee under each of the IPCo Indentures, or any duly appointed successor trustee and collateral agent under either IPCo Indenture.

1.87    **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.88    **Loan Debtors** means J. Crew Group, Inc., Chinos B, J. Crew Operating Corp., J. Crew Inc., J. Crew International, Inc., Grace Holmes, Inc., H. F. D. No. 55, Inc., Madewell Inc., and J. Crew Virginia, Inc., each in their capacity as obligor or guarantor of the obligations under the ABL Facility Documents and Term Loan Documents, as applicable.

1.89    **Management Incentive Plan** means the form, terms, allocation and vesting of awards under any management incentive plan adopted after the Effective Date by the New Board in its sole discretion.

1.90    **NewCo Holdings** means a newly formed limited liability company formed pursuant to the Restructuring Transaction Steps that will issue the New Common Equity.

1.91    **NewCo Entity Group** means the newly formed entities pursuant to the Restructuring Transaction Steps.

1.92    **New Board** means the initial board of directors of NewCo Holdings consisting of seven directors to be selected in accordance with Section 5.11 of the Plan.

WEIL:\97578913\4\54457.0008

1.93    **New Common Equity** means the common equity of NewCo Holdings issued on the Effective Date authorized pursuant to the New Organizational Documents of NewCo Holdings, as set forth in the Plan Supplement.

1.94    **New Equity Allocation** means 15% of New Common Equity allocated to the New Term Lenders in consideration for their commitments to participate in the New Term Loans in accordance with the Transaction Support Agreement, subject to dilution from (a) New Common Equity issued upon the exercise of the New Warrants, (b) New Common Equity issued pursuant to the Management Incentive Plan, and (c) New Common Equity issued after the Effective Date other than the Incremental Debt Equity.

1.95    **New Organizational Documents** means the organizational and governance documents for the Reorganized Debtors, including, as applicable, the certificates or articles of incorporation, certificates of formation or certificates of limited partnership, bylaws, limited liability company agreements, or limited partnership agreements (or equivalent governing documents of any of the foregoing).  To the extent such New Organizational Documents reflect material changes to the Debtors' existing organizational documents and bylaws, draft forms of such New Organizational Documents will be included in the Plan Supplement.

1.96    **New Term Agent** means the administrative and collateral agent under the New Term Credit Agreement, in its capacity as such.

1.97    **New Term Credit Agreement** means the credit agreement with respect to the New Term Loans, dated as of the Effective Date (as it may be amended, restated, amended and restated, supplemented, or modified from time to time, solely in accordance with the terms thereof), which will be filed as part of the Plan Supplement.

1.98    **New Term Documents** means, collectively, the New Term Credit Agreement and each other agreement, security agreement, pledge agreement, collateral assignment, notice, mortgage, control agreement, guarantee, certificate, document or instrument executed or delivered in connection with the foregoing, whether or not specifically mentioned herein or therein, as the same may be modified, amended, restated, amended and restated, supplemented or replaced from time to time.

1.99    **New Term Lender** means any lender in respect to the New Term Loan, including all DIP Lenders that convert DIP Obligations into New Term Loans, each in their capacity as such.

1.100    **New Term Loans** means new senior secured first lien term loans extended to some of the Reorganized Debtors under the New Term Documents in an initial aggregate amount of $400 million, including any principal amount of DIP Obligations converted into such loans on a dollar-for-dollar basis.

1.101    **New Warrants** means warrants entitling the holders thereof to purchase, in the aggregate, 15% of the New Common Equity at a security price that assumes enterprise value of $1,750,000,000, which securities (a) will dilute New Common Equity issued (i) pursuant to the Plan, (ii) as New Equity Allocation or as Incremental Debt Equity, and (iii) as the Backstop Premium, and (b) will be diluted by any New Common Equity issued after the Effective Date before exercise of the New Warrants, on the terms and subject to the conditions set forth in the Warrant Agreement.

1.102    **Ongoing Trade Claim** means any General Unsecured Claim held by a party that, within 30 days of the Petition Date, has executed a trade agreement that expressly designates such party as a holder of an Ongoing Trade Claim and that provides for continuity of goods and services to be provided to the Reorganized Debtors for a period of at least 180 days on terms no less favorable to the Debtors than those in place for the year before the Petition Date, except as otherwise agreed by the Debtors with the consent of the Requisite Consenting Support Parties (such consent not to be unreasonably withheld).

1.103    **Operating Agreement** means the operating agreement among the holders of New Common Equity, which will be filed as part of the Plan Supplement.

1.104    **Other General Unsecured Claim** means any General Unsecured Claim other than an Ongoing Trade Claim, including, for the avoidance of doubt, the Term Loan Deficiency Claims and all Claims arising from rejection of an Executory Contract or Unexpired Lease pursuant to sections 365 or 1123 of the Bankruptcy Code.

1.105    **Other Secured Claim** means a Claim as of the Petition Date, other than an ABL Facility Claim, Term Loan Secured Claim, or IPCo Notes Claim, that is (a) secured by a Lien that is valid, perfected, and enforceable under applicable law or by reason of a Final Order, to the extent of the value of the applicable Collateral as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors (with the consent of the Requisite Consenting Support Parties) or the Reorganized Debtors, as applicable, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.106    **Petition Date** means, with respect to each Debtor, the date on which such Debtor commenced its Chapter 11 Case.

1.107    **PIK Toggle Notes Claim** means a Claim arising under the indenture for the 7.75%/8.50% Senior PIK Toggle Notes due 2022.

1.108    **Plan** means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, any appendices, schedules, and supplements contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code.

1.109    **Plan Supplement** means the forms of certain documents, schedules, and exhibits effectuating the transactions contemplated in the Plan, which are to be filed with the Bankruptcy Court not later than 10 calendar days before the deadline for filing objections to the Plan, including, (a) the Exit ABL Credit Facility commitment letter, (b) the New Term Credit Agreement, (c) the Warrant Agreement, (d) the Operating Agreement and New Organizational Documents (to the extent such New Organizational Documents reflect material changes from the Debtors' existing organizational documents and bylaws), (e) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (f) the schedule of Causes of Action retained by the Debtors; (g) the Schedule of Rejected Contracts and Leases; (h) the Schedule of Assigned Contracts and Leases; and (i) the Restructuring Transaction Steps; *provided* that the Debtors shall have the right to amend any schedules, exhibits, or amendments filed as the Plan Supplement through the Effective Date, in accordance with the terms of the Plan and the Transaction Support Agreement.

1.110    **Priority Non-Tax Claim** means any Claim entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, DIP Claim, or a Priority Tax Claim.

1.111    **Priority Tax Claim** means any Claim of a Governmental Entity of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.112    **Pro Rata** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed

Claims or Allowed Interests and Disputed Interests, as applicable, in a particular Class and other Classes entitled to share in the same recovery under the Plan.

1.113 **Professional** means any professional retained pursuant to section 327, 328, or 363 of the Bankruptcy Code by the Debtors or any official committee appointed in the Chapter 11 Cases.

1.114 **Professional Fee Claims** means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

1.115 **Professional Fee Escrow** means an escrow account established and funded pursuant to Section 2.2 of the Plan.

1.116 **Professional Fee Reserve Amount** means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with Section 2.2(b) of the Plan.

1.117 **Registration Rights Agreement** means the agreement pursuant to which NewCo Holdings will register, offer, and sell the New Common Equity.

1.118 **Reinstate, Reinstated, or Reinstatement** means providing a Claim or Interest with the treatment contemplated by section 1124(a)(2) of the Bankruptcy Code.

1.119 **Related Parties** means individually or collectively, and each in their capacity as such: with respect to a given Entity, all present and former officers (including chief restructuring officers), directors (including independent directors), stockholders, general or limited partners, managers, managing directors, managing members, members, principals, employees, attorneys, agents, trustees, financial advisors, restructuring advisors, accountants, investment bankers, consultants, managed accounts, managed funds and other representatives and agents of such Entity.

1.120 **Released Parties** means each of, and solely in their capacity as such, (a) the Debtors and the Reorganized Debtors, (b) the ABL Agent and ABL Lenders, (c) the Term Agent and Term Lenders, (d) the Indenture Trustees and IPCo Noteholders, (e) the Consenting Support Parties, (f) the Sponsors, (g) the DIP Agent and DIP Lenders, (h) the Exit ABL Agent and Exit ABL Lenders, (i) the New Term Agent and New Term Lenders, (j) the Backstop Parties, and (k) the Related Parties for each of the foregoing; *provided* that a holder of a Claim or Interest that objects to or opts-out of the releases set forth in Section 10.7(b) of the Plan shall not be a "Released Party."

1.121 **Reorganized Debtors** means each of the Debtors, NewCo Holdings, the NewCo Entity Group, or any successor thereto, on and after the Effective Date.

1.122 **Required DIP Lenders** means the "Required Lenders" under the DIP Credit Agreement.

1.123 **Requisite Consenting Support Parties** has the meaning set forth in the Transaction Support Agreement.

1.124 **Restructuring Transaction Steps** means the series of corporate transactions and actions to be implemented on or around the Effective Date pursuant to the Plan and filed as part of the Plan Supplement.

1.125 **Schedule of Assigned Contracts and Leases** means a schedule, filed as part of the Plan Supplement, that sets forth those Unexpired Leases and Executory Contracts that the Debtors with the

11

consent of the Requisite Consenting Support Parties, have determined to assign to an entity in the NewCo Entity Group or another Debtor.

1.126    **Schedule of Rejected Contracts and Leases** means a schedule, filed as part of the Plan Supplement, that sets forth those Unexpired Leases and Executory Contracts that the Debtors with the consent of the Requisite Consenting Support Parties, have determined to reject under the Plan.

1.127    **Schedules** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as the same may be amended, modified, or supplemented from time to time.

1.128    **Section 510(b) Claims** means any Claim as of the Petition Date (a) arising from the recession of a purchase or sale of a Security of a Debtor; (b) for damages arising from the purchase or sale of such Security; or (c) for reimbursement of contribution Allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.129    **Securities Act** means the Securities Act of 1933, as amended.

1.130    **Security** has the meaning set forth in in section 101(49) of the Bankruptcy Code.

1.131    **Sponsors** means, collectively, TPG Chinos, L.P., TPG Chinos Co-Invest, L.P., Green Equity Investors V, L.P., Green Equity Investors Side V, L.P., and LGP Chino Coinvest LLC.

1.132    **Tax Code** means the Internal Revenue Code of 1986, as amended from time to time.

1.133    **Term Agent** means Wilmington Savings Fund Society, FSB in its capacity as successor administrative agent under the Term Loan Agreement.

1.134    **Term Lenders** means the lenders under the Term Loan Agreement and any other Entity that becomes a lender thereunder from time to time in accordance with the Term Loan Agreement, each in their capacity as such.

1.135    **Term Loan Agreement** means the *Amended and Restated Credit Agreement*, dated March 5, 2014 (as amended, restated, supplemented and otherwise modified from time to time) between Group, Inc. as the borrower, the Term Lenders, and the Term Agent.

1.136    **Term Loan Claims** means the Term Loan Deficiency Claims and the Term Loan Secured Claims, collectively.

1.137    **Term Loan Deficiency Claims** means any Claim arising under the Term Loan Documents that is not a secured Claim as determined pursuant to section 506(a) of the Bankruptcy Code.

1.138    **Term Loan Documents** means the Term Loan Agreement and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, fee letters, and other security documents.

1.139    **Term Loan Secured Claims** means all Claims arising under or related to the Term Loan Documents, including all accrued but unpaid interest, costs, fees, guarantees and indemnities, other than any Term Loan Deficiency Claims.

WEIL:\97578913\4\54457.0008

1.140 **Transaction Support Agreement** means the *Transaction Support Agreement*, dated May 3, 2020, among the Debtors and the other parties thereto, as it may be amended, supplemented, or modified from time to time in accordance with the terms thereof.

1.141 **Unexpired Lease** means an unexpired lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.142 **Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a) and 1124 of the Bankruptcy Code.

1.143 **Warrant Agreement** means the warrant agreement providing for issuance of the New Warrants, which will be filed as part of the Plan Supplement.

**B.    Interpretation; Application of Definitions and Rules of Construction**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.    Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to legal tender of the United States of America, unless otherwise expressly provided.

**D.    Controlling Document**

In the event of an inconsistency between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; *provided*, that notwithstanding anything herein to the contrary, in the event of a conflict between the Confirmation Order, on the one hand, and the Plan or any of the instruments in the Plan Supplement, on the other hand, the Confirmation Order shall govern and control in all respects.

## ARTICLE II      ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS.

2.1.   **Administrative Expense Claims**

Each holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim or DIP Claim), except to the extent such holder agrees to less favorable treatment, shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, and (b) the first business day after the date that is 30 calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided* that (a) any Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any course of dealing or agreements governing, instruments evidencing, or other documents relating to the applicable transaction and (b) the holders of any adequate protection claims granted by the DIP Order will not receive any recovery on account of such claims, having waived such recovery solely for purposes of the Plan.

Except as otherwise provided in Section 2.1 of the Plan and except with respect to Professional Fee Claims, requests for payment of Administrative Expense Claims must be filed and served on the Debtors or Reorganized Debtors no later than the Administrative Expense Bar Date.  Holders of Administrative Expense Claims that are required to file and serve a request for payment and that do not timely file and serve such a request shall be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, or their respective property, and such Administrative Expense Claims shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims.

2.2.   **Professional Fee Claims**

(a)   Final Fee Applications

All final requests for Professional Fee Claims shall be filed no later than 60 days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

(b)   Professional Fee Reserve Amount

All Professionals shall estimate in good faith their unpaid Professional Fee Claims before and as of the Effective Date and shall deliver such estimate to the Debtors and counsel to the Ad Hoc Committee at least three calendar days before the Effective Date; provided that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not provide such estimate, the Debtors and Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

(c)   Professional Fee Escrow

If the Professional Fee Reserve Amount is greater than zero, then as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors will establish and fund the Professional Fee Escrow with cash equal to the Professional Fee Reserve Amount, and no Liens,

14

Claims, or interests will encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including funds held in the Professional Fe Escrow) will (i) not be and will not be deemed to be property of the Debtors or the Reorganized Debtors and (ii) will be held in trust for the Professionals; *provided* that funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full will revert to the Reorganized Debtors. Allowed Professional Fee Claims will be paid in cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' obligations with respect to Professional Fee Claims will not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency will be promptly funded to the Professional Fee Escrow from the Debtors' estates and Reorganized Debtors without any further action or order of the Bankruptcy Court.

(d)      Post-Effective Date Fees and Expenses

On and after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, will pay in the ordinary course of business and without any further action or order of the Bankruptcy Court, pay in cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Debtors and Reorganized Debtors, as applicable.

On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services provided after such date shall terminate, and the Reorganized Debtors may employ and pay any post-Effective Date fees and expenses of any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

2.3.   **DIP Claims**

Except if a holder of an Allowed DIP Claim agrees to less favorable treatment, each holder of an Allowed DIP Claim will receive, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of such Allowed DIP Claim, (a) (i) on account of the outstanding principal amount of such Claim, an equal principal amount of New Term Loans, (ii) a portion of the New Equity Allocation and New Warrants, and (iii) cash on account of accrued and unpaid interest and other charges payable through the Effective Date, or (b) such other treatment agreed upon among the Debtors, the Requisite Consenting Support Parties, and the holders of Allowed DIP Claims.

2.4.   **Priority Tax Claims**

Except if a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors, cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first business day after the date that is 30 calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course; *provided* that the Debtors and the Reorganized Debtors, as applicable, reserve the right to prepay all or a portion of any Allowed Priority Tax Claim at any time without penalty or premium.

WEIL:\97578913\4\54457.0008

2.5.    **Payment of Statutory Fees**

On and after the Effective Date, the Reorganized Debtors shall pay all fees incurred pursuant to section 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code for each Debtor's case, or until such time as a final decree is entered closing a particular Debtor's case, a Final Order converting such Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's case is entered.

### ARTICLE III        CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1.    **Classification in General**

A Claim or Interest is placed in a particular Class under sections 1122 and 1123(a)(1) of the Bankruptcy Code for all purposes, including voting, confirmation, and distribution under the Plan; *provided* that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled.

3.2.    **Formation of Debtor Groups for Convenience Only**

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making distributions in accordance with the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets; and, except as otherwise provided by or permitted under the Plan, all Reorganized Debtors shall continue to exist as separate legal entities after the Effective Date.

3.3.    **Summary of Classification**

The below table designates Classes of Claims and Interests for each Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

16

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims (All Debtors) | Unimpaired | No (Presumed to accept) |
| 2 | Other Secured Claims (All Debtors) | Unimpaired | No (Presumed to accept) |
| 3 | ABL Facility Claims (Only Loan Debtors) | Unimpaired | No (Presumed to accept) |
| 4 | Term Loan Secured Claims (Only Loan Debtors) | Impaired | Yes |
| 5 | IPCo Notes Claims (Only IPCo Debtors) | Impaired | Yes |
| 6-A | Ongoing Trade Claims (All Debtors) | Impaired | Yes |
| 6-B | Other General Unsecured Claims (All Debtors) | Impaired | Yes |
| 7 | Intercompany Claims (All Debtors) | Unimpaired | No (Presumed to accept) |
| 8 | Section 510(b) Claims (All Debtors) | Impaired | No (Deemed to reject) |
| 9 | Intercompany Interests (All Debtors) | Unimpaired | No (Presumed to accept) |
| 10-A | Existing Holdings Preferred Equity (Only Chinos Holdings) | Impaired | No (Deemed to reject) |
| 10-B | Existing Holdings Equity (Only Chinos Holdings) | Impaired | No (Deemed to reject) |

3.4.    **Special Provision Governing Unimpaired Claims**

Nothing in the Plan shall affect the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5.    **Elimination of Vacant Classes**

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of the applicable Debtor for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether such Plan satisfies section 1129(a)(8) of the Bankruptcy Code.

3.6.    **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by such Class.

17

# ARTICLE IV          TREATMENT OF CLAIMS AND INTERESTS.

4.1.     **Priority Non-Tax Claims (Class 1)**

(a)          <u>Classification</u>:  For each Debtor, Class 1 consists of Priority Non-Tax Claims against such Debtor.

(b)          <u>Treatment</u>:  Except if a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, at the sole option of the Reorganized Debtors, (i) each such holder shall receive payment in cash in an amount equal to the Allowed amount of such Claim, payable on the later of the Effective Date and the date that is 10 business days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable, (ii) such holder's Allowed Priority Non-Tax Claim shall be Reinstated, or (iii) such holder shall receive such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired.

(c)          <u>Voting</u>:  Class 1 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders of Priority Non-Tax Claims will not be solicited.

4.2.     **Other Secured Claims (Class 2)**

(a)          <u>Classification</u>:  For each Debtor, Class 2 consists of Other Secured Claims against such Debtor.  If Other Secured Claims are secured by different Collateral or different interests in the same Collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)          <u>Treatment</u>:  Except if a holder of an Allowed Other Secured Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Other Secured Claim, at the option of the Reorganized Debtors, on the later of the Effective Date and the date that is 10 business days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim shall receive on account of such Allowed Claim (i) cash in an amount equal to the Allowed amount of such Claim, (ii)  delivery of the collateral securing such Allowed Claim and cash for any interest required under section 506(b) of the Bankruptcy Code, or (iii) Reinstatement or such other treatment that will render such holder's Allowed Other Secured Claim Unimpaired.  If an Other Secured Claim is treated under clauses (i) or (ii), the Liens securing such Other Secured Claim shall be deemed released immediately upon payment or delivery of collateral, as applicable.

(c)          <u>Voting</u>:  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders of Other Secured Claims will not be solicited.

4.3.     **ABL Facility Claims (Class 3)**

(a)          <u>Classification</u>:  For each Loan Debtor, Class 3 consists of ABL Facility Claims, and such Class is vacant for all other Debtors.

18

(b)     Allowance:  The ABL Facility Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against each of the Loan Debtors in the aggregate face amount of the then outstanding amount under the ABL Credit Agreement, (i) plus any unreimbursed amounts thereunder, and any accrued and unpaid interest payable at the default rate specified under the ABL Credit Agreement on such unreimbursed amounts through the Effective Date, (ii) plus the amount of any outstanding letters of credit issued pursuant to the ABL Facility, (iii) plus any fees, charges, expenses, and other amounts due but unpaid under the ABL Credit Agreement including any "Cash Management Obligations" as defined therein. Neither the ABL Lenders nor the ABL Agent shall be required to file proofs of claim on account of any ABL Facility Claims, but the ABL Agent will submit a payoff letter for the Debtors' approval at least 14 days before the Effective Date.

(c)     Treatment:  Except if a holder of an Allowed ABL Facility Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed ABL Facility Claim, each holder of an Allowed ABL Facility Claim will receive, on the Effective Date, cash in the full amount of its Allowed ABL Facility Claim and all issued and outstanding letters of credit shall be cash collateralized in accordance with the terms and conditions of the ABL Credit Agreement.  To the extent that any other ABL Facility Claim is contingent as of the Effective Date, the Reorganized Debtors may, in their sole discretion, elect to (i) terminate any further commitments under the ABL Facility, (ii) cash collateralize such contingent amounts, or (iii) provide the ABL Lenders with such other treatment mutually satisfactory.

(d)     Voting:  Class 3 is Unimpaired, and the holders of ABL Facility Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Allowed ABL Facility Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders of ABL Facility Claims will not be solicited.

4.4.    **Term Loan Secured Claims (Class 4)**

(a)     Classification:  For each Loan Debtor, Class 4 consists of Term Loan Secured Claims, and such Class is vacant for all other Debtors.

(b)     Allowance:  The Term Loan Secured Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code against each Loan Debtor in the aggregate amount of $716,645,605.

(c)     Treatment:  Except if a holder of an Allowed Term Loan Secured Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Term Loan Secured Claim, each holder of an Allowed Term Loan Secured Claim will receive, on the Effective Date, its Pro Rata share of New Common Equity representing, in the aggregate, 76.5% of the New Common Equity issued on the Effective Date remaining after distributing the Backstop Premium, the New Equity Allocation, and any other New Common Equity distributed pursuant to the Plan other than the New Common Equity distributed to holders of IPCo Notes Claims, which will be subject to dilution from New Common Equity (i) issuable upon exercise of the New Warrants, (ii) issued pursuant to the Management Incentive Plan, and (iii) otherwise issued by NewCo Holdings after the Effective Date, including the Incremental Debt Equity.

(d)     Voting:  Class 4 is Impaired, and the holders of Allowed Term Loan Secured Claims are entitled to vote to accept or reject the Plan.

4.5.    **IPCo Notes Claims (Class 5)**

(a)    <u>Classification</u>:  For each IPCo Debtor, Class 5 consists of IPCo Notes Claims, and such Class is vacant for all other Debtors.

(b)    <u>Allowance</u>:  The IPCo Notes Claims are Allowed against each IPCo Debtor in the aggregate principal amount of $347,599,000, plus (i) a make-whole premium equal to $58,044,927, (ii) accrued and unpaid interest through the Petition Date equal to $6,025,049, and (iii) any other prepetition obligations payable under the IPCo Indentures and IPCo Notes.

(c)    <u>Treatment</u>:  Except if a holder of an Allowed IPCo Notes Claim agrees to a less favorable treatment of such Claim and notwithstanding anything to the contrary in the IPCo Indentures or the IPCo Intercreditor Agreement, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed IPCo Notes Claim, each holder of an Allowed IPCo Notes Claim will receive, on the Effective Date, its Pro Rata share of New Common Equity representing, in the aggregate, 23.5% of the New Common Equity issued on the Effective Date remaining after distributing the Backstop Premium, the New Equity Allocation, and any other New Common Equity distributed pursuant to the Plan other than the New Common Equity distributed to holders of Term Loan Secured Claims, subject to dilution from New Common Equity (i) issuable upon exercise of the New Warrants, (ii) issued pursuant to the Management Incentive Plan, and (iii) otherwise issued by NewCo Holdings after the Effective Date, including the Incremental Debt Equity.

(d)    <u>Voting</u>:  Class 5 is Impaired, and the holders of Allowed IPCo Notes Claims are entitled to vote to accept or reject the Plan.

4.6.    **Ongoing Trade Claims (Class 6-A)**

(a)    <u>Classification</u>:  For each Debtor, Class 6-A consists of Ongoing Trade Claims.

(b)    <u>Treatment</u>:  Except if a holder of an Allowed Ongoing Trade Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, each holder of an Allowed Ongoing Trade Claim will receive, on the Effective Date, its Pro Rata share of a cash pool in an aggregate amount equal to $71,000,000; *provided* that the aggregate amount of cash distributed on account of any Allowed Ongoing Trade Claim will not exceed 50% of the Allowed amount of such Claim.

(c)    <u>Voting</u>:  Class 6-A is Impaired, and the holders of Allowed Ongoing Trade Claims are entitled to vote to accept or reject the Plan.

4.7.    **Other General Unsecured Claims (Class 6-B)**

(a)    <u>Classification</u>:  For each Debtor, Class 6-B consists of Other General Unsecured Claims.

(b)    <u>Treatment</u>:  Except if a holder of an Allowed Other General Unsecured Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, each holder of an Allowed Other General Unsecured Claim will receive, on the Effective Date, its Pro Rata share of the cash pool allocated to each Debtor as set forth below; *provided* that the aggregate amount of cash distributed on account of any Allowed Other General Unsecured Claim will not exceed 50% of the Allowed amount of such Claim.  The cash pool may be

WEIL:\97578913\4\54457.0008

reallocated among the Debtors after the occurrence of the Claims bar date, in their reasonable business judgement, to recalibrate for, among other things, the Claims asserted against each Debtor.

| Debtor | Cash Pool | |
|---|---|---|
| | If Class 6-B Accepts | If Class 6-B Rejects |
| J. Crew Inc. | $69,000 | $23,000 |
| J. Crew Operating Corp. | $1,877,000 | $625,900 |
| Grace Holmes, Inc. | $399,000 | $133,000 |
| H.F.D. No. 55, Inc. | $165,000 | $55,000 |
| Madewell Inc. | $489,700 | $163,000 |
| J. Crew Group, Inc. | $300 | $100 |
| Total | $3,000,000 | $1,000,000 |

The Plan shall be deemed a filed objection for purposes of section 502 of the Bankruptcy Code to any Claim arising out of or relating to the rejection of an Executory Contract or Unexpired Lease whose holder is seeking the allowance of such Claim in excess of the amounts allowable under section 502(b) of the Bankruptcy Code.

Subject to occurrence of the Effective Date and solely for purposes of the Plan, holders of the Term Loan Deficiency Claims agree to forgo any distribution under the Plan on account of such Term Loan Deficiency Claims.

   (c) <u>Voting</u>:  Class 6-B is Impaired, and the holders of Other General Unsecured Claims are entitled to vote to accept or reject the Plan.

  4.8. **<u>Intercompany Claims (Class 7)</u>**

   (a) <u>Classification</u>:  For each Debtor, Class 7 consists of Intercompany Claims.

   (b) <u>Treatment</u>:  From and after the Effective Date, all Intercompany Claims, including the PIK Toggle Notes Claim, shall be adjusted, continued, settled, Reinstated, discharged, contributed to capital, or eliminated, in each case to the extent determined to be appropriate by the Reorganized Debtors in their sole discretion.

   (c) <u>Voting</u>:  Class 7 is Unimpaired, and the holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

  4.9. **<u>Section 510(b) Claims (Class 8)</u>**

   (a) <u>Classification</u>: For each Debtor, Class 8 consists of Section 510(b) Claims.

   (b) <u>Treatment</u>:  On the Effective Date, all Section 510(b) Claims will be cancelled, released, discharged, and extinguished and will be of no further force or effect, and holders of such claims will not receive any distribution on account of such claims.

   (c) <u>Voting</u>:  Class 8 is Impaired, and the holders of Section 510(b) Claims are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

WEIL:\97578913\4\54457.0008

4.10.    **Intercompany Interests (Class 9)**

(a)    <u>Classification</u>:  For each Debtor, Class 9 consists of Intercompany Interests.

(b)    <u>Treatment</u>:  From and after the Effective Date, all Intercompany Interests shall be adjusted, Reinstated, or cancelled, to the extent reasonably determined to be appropriate by the Reorganized Debtors in their sole discretion.

(c)    <u>Voting</u>:  Class 9 is Unimpaired, and the holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

4.11.    **Existing Holdings Preferred Equity (Class 10-A)**

(a)    <u>Classification</u>:  For Chinos Holdings, Class 10-A consists of Existing Holdings Preferred Equity, and such Class is vacant for all other Debtors.

(b)    <u>Treatment</u>:  Holders of Existing Holdings Preferred Equity shall not receive or retain any property under the Plan on account of such Existing Holdings Preferred Equity.  On the Effective Date, all Existing Holdings Preferred Equity shall be cancelled and shall be of no further force and effect, regardless of whether surrendered for cancellation.

(c)    <u>Voting</u>:  Class 10-A is Impaired, and the holders of Existing Holdings Preferred Equity are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Existing Holdings Preferred Equity are not entitled to vote to accept or reject the Plan, and the votes of such holders of Existing Holdings Preferred Equity will not be solicited.

4.12.    **Existing Holdings Equity (Class 10-B)**

(a)    <u>Classification</u>:  For Chinos Holdings, Class 10-B consists of Existing Holdings Equity, and such Class is vacant for all other Debtors.

(b)    <u>Treatment</u>:  Holders of Existing Holdings Equity shall not receive or retain any property under the Plan on account of such Existing Holdings Equity.  On the Effective Date, all Existing Holdings Equity shall be cancelled and shall be of no further force and effect, regardless of whether surrendered for cancellation.

(c)    <u>Voting</u>:  Class 10-B is Impaired, and the holders of Existing Holdings Equity are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Existing Holdings Equity are not entitled to vote to accept or reject the Plan, and the votes of such holders of Existing Holdings Equity will not be solicited.

**ARTICLE V        MEANS FOR IMPLEMENTATION.**

5.1.    **Sources of Funding for Plan Distributions**

Distributions under the Plan will be funded with (a) the Debtors' cash on hand, (b) cash proceeds from the Exit ABL Facility, (c) conversion of principal of DIP Obligations to New Term Loans pursuant to Section 2.3 of the Plan, (d) any cash proceeds from the New Term Loans, and (e) issuance of

22

New Common Equity and New Warrants. The Confirmation Order will be deemed to authorize, among other things, the foregoing transactions.

5.2. **General Corporate Authority**

(a)    On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution and the New Organizational Documents pursuant to applicable state law; (iv) the issuance of securities, including the New Common Equity, New Equity Allocation, New Warrants, and the New Common Equity issuable upon exercise of the New Warrants, all of which shall be authorized and approved in all respects, without further action being required under applicable law, regulation, order, or rule; (v) if the Debtors expect to qualify for and elect to utilize the special bankruptcy exception under section 382(*l*)(5) of the Tax Code, the Debtors may seek Bankruptcy Court approval of certain procedures and potential restrictions on the accumulation of Claims by Entities who are or will be substantial claimholders and the charter, bylaws, and other organizational documents may restrict certain transfer of the New Common Equity, and (vi) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or to reincorporate in another jurisdiction, subject, in each case, to the New Organizational Documents.

(b)    Each officer, manager, or member of the board of directors of the Debtors is (and each officer, manager, or member of the Reorganized Debtors, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan (including the New Equity Allocation and New Warrants) in the name of and on behalf of the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except for those expressly required pursuant to the Plan.

(c)    All matters provided for herein involving the corporate structure of the Debtors or Reorganized Debtors, to the extent applicable, or any corporate or related action required by the Debtors or Reorganized Debtors in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors or Reorganized Debtors, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or the Reorganized Debtors.

5.3. **Exit ABL Facility**

(a)    On the Effective Date, in accordance with, and subject to, the terms and conditions of the Exit ABL Facility Documents, the Reorganized Debtors (which may include an entity in the NewCo

Entity Group) will enter into the Exit ABL Facility without the need for any further corporate action and without further action by the holders of Claims or Interests. Any proceeds of the Exit ABL Facility shall be used to (i) fund distributions, costs, and expenses contemplated by the Plan, and (ii) fund general working capital and for general corporate purposes of the Reorganized Debtors, in each case subject to the terms of the Exit ABL Facility Documents.

(b)     On the Effective Date, the Exit ABL Facility Documents shall be executed and delivered by the Reorganized Debtors. All Liens and security interests granted pursuant to the Exit ABL Facility Documents shall be (i) valid, binding, perfected, and enforceable Liens on and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law, (ii) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer, and (iii) not otherwise subject to avoidance, recharacterization, or subordination under any applicable law. Each of the Entities granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such Liens and security interests under any applicable law, and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.4.    **Conversion of DIP Claims; New Term Loans**

In consideration of each Consenting Support Party (which includes any IPCo Noteholder or Term Lender that is a qualified institutional buyer or accredited institutional investor and becomes a Consenting Support Party by electing to participate in the DIP Obligations and New Term Loans in accordance with the Transaction Support Agreement) agreeing to support the transactions described in the Transaction Support Agreement to be consummated pursuant to the Plan, consenting to exchange such party's Term Loan Secured Claims and IPCo Notes Claims for the New Common Equity, and consenting to the various conditions and covenants set forth in the Transaction Support Agreement, including, among other things, the imposition of restrictions on the transfer of its Claims and Interests, each Consenting Support Party shall have the right to participate in providing the DIP Loans and the New Term Loans, and also to receive the New Equity Allocation and New Warrants. On the Effective Date:

(a)     the principal amount of the DIP Claims will be converted to New Term Loans (the DIP Claims so converted shall be deemed to have been paid in full and be no longer outstanding);

(b)     in accordance with, and subject to, the terms and conditions of the New Term Documents, the Reorganized Debtors will borrow or be deemed to have borrowed the New Term Loans without the need for any further corporate action and without further action by the holders of Claims or Interests;

(c)     the New Term Documents shall be executed and delivered by the Reorganized Debtors. All Liens and security interests granted pursuant to the New Term Documents shall be (i) valid, binding, perfected, and enforceable Liens on and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law, (ii) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer, and (iii) not otherwise subject to avoidance, recharacterization, or subordination under any applicable law. Each of the Entities granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such Liens and security interests under any applicable law, and shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties; and

WEIL:\97578913\4\54457.0008

(d)     the Reorganized Debtors will distribute to each Consenting Support Party the pro rata share (the numerator being the outstanding principal amount of New Term Loans held by such party on the Effective Date and the denominator being the aggregate outstanding principal amount of all New Term Loans on the Effective Date) of the New Equity Allocation and the New Warrants.

Proceeds of the New Term Loans shall be used to (i) fund distributions, costs, and expenses contemplated by the Plan, and (ii) fund general working capital and general corporate needs of the Reorganized Debtors, in each case subject to the terms of the New Term Documents.

5.5.    **Backstop Commitments**

On the Effective Date, in exchange for providing the commitments described in the Backstop Commitment Letter, the Backstop Parties will receive the Backstop Premium in accordance with the Backstop Commitment Letter.

5.6.    **Authorization and Issuance of New Common Equity and the New Warrants**

(a)     On the Effective Date, the Reorganized Debtors shall issue or cause to be issued the New Common Equity (including New Common Equity on account of the New Equity Allocation and the Backstop Premium) and the New Warrants in accordance with the terms of the Plan, the New Organizational Documents, and the Warrant Agreement, without the need for any further corporate, limited liability company, or shareholder action.  All of the New Common Equity, including the New Common Equity issuable upon exercise of the New Warrants, upon payment of the exercise price in accordance with the terms of such New Warrant, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable when so issued.

(b)     On the Effective Date, (i) neither the New Common Equity nor the New Warrants shall be registered under the Securities Act, and neither the New Common Equity nor the New Warrants shall be listed for public trading on any securities exchange and (ii) none of the Reorganized Debtors shall be a reporting company under the Exchange Act.

(c)     Except as provided in the Plan or the Confirmation Order, the New Common Equity and the New Warrants shall be issued in the names of such holders or their nominees in accordance with DTC's book-entry exchange procedures or on the books and records of a transfer agent; *provided*, that such New Common Equity and New Warrants will only be issued in accordance with DTC book-entry procedures if permitted to be held through DTC's book-entry system and the Reorganized Debtors, in their sole discretion, deem such method of distribution advisable.  If the New Common Equity or New Warrants are issued in accordance with DTC book-entry procedures (i) one or more global certificates representing such New Common Equity or New Warrants, as applicable, shall be registered with the transfer agent or warrant agent, as applicable, as agent for the New Common Equity or New Warrants, as applicable,  in the name of, and shall be deposited with, DTC or its nominee, (ii)  the ownership interest of each holder of such New Common Equity or New Warrants, and transfers of ownership interests therein, shall be recorded on the records of the direct and indirect participants in DTC, and (iii) to receive distributions of New Common Equity or New Warrants, holders of applicable Allowed Claims shall be required to designate a direct or indirect participant in DTC with whom such holder has an account into which such New Common Equity or New Warrants, as applicable, may be deposited.

5.7.    **Continued Corporate Existence**

(a)     Except as otherwise set forth in the Restructuring Transaction Steps, the Debtors shall continue to exist after the Effective Date as the Reorganized Debtors in accordance with the applicable

WEIL:\97578913\4\54457.0008

laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Organizational Documents.

(b)  On or after the Effective Date, each Reorganized Debtor may take such action that may be necessary or appropriate as permitted by applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate, the Plan, including causing: (i) a Reorganized Debtor to be merged or dissolved; (ii) a Reorganized Debtor to be converted to a limited liability company or other entity; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Chapter 11 Case on the Effective Date or any time thereafter.

5.8.  **Exemption from Securities Laws**

(a)  On and as of the Effective Date, in accordance with the Transaction Support Agreement, if any party will beneficially own (as defined in Rules 13d-3 and 13d-5 under the Exchange Act) 2% or more of the New Common Equity outstanding on the Effective Date, NewCo Holdings shall enter into and deliver the Registration Rights Agreement to each such party and such agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each party thereto shall be bound thereby.

(b)  The offer, issuance, and distribution of the New Common Equity pursuant to Section 4.4 and Section 4.5 of the Plan and the Backstop Premium will be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any state or local law requiring registration for the offer, issuance, or distribution of Securities. These securities shall be freely tradable by the recipients thereof, subject to: (i) the holder not being an "underwriter" with respect to such securities, as that term is defined in subsection (b) of section 1145 the Bankruptcy Code or being directly or indirectly controlling or controlled by, or under direct or indirect common control with, the Reorganized Debtor that issued such securities; (ii) compliance with any rules and regulations of the Securities and Exchange Commission applicable at the time of any future transfer of such securities or instruments; (iii) any restrictions on the transferability of the New Common Equity contained in the Operating Agreement; and (iv) any applicable regulatory approval.

(c)  The offer, issuance, and distribution of the New Equity Allocation and the New Warrants to the New Term Lenders are being made in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act and/or Regulation D thereunder. Such securities together with the New Common Equity issuable upon exercise of the New Warrants will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 or Rule 144A under the Securities Act. Additionally, the New Warrants are subject to any restrictions on the transferability of such New Warrants contained in the Warrant Agreement.

(d)  If the Reorganized Debtors elect, on or after the Effective Date, for any portion of the New Common Equity to be held through the facilities of the DTC, then DTC will be required to accept and conclusively rely on the Plan and the Confirmation Order in lieu of a legal opinion regarding whether the New Common Equity are exempt from registration or eligible for DTC book-entry delivery, settlement, and depository services.

5.9.    **Cancellation of Existing Securities and Agreements**

(a)    Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to Executory Contracts or Unexpired Leases that shall be assumed by the Reorganized Debtors on the Effective Date, all agreements, instruments, and other documents evidencing the ABL Facility Claims, Term Loans Claims, IPCo Notes Claims, PIK Toggle Notes Claims (if cancelled by the Reorganized Debtors pursuant to Section 4.8 of the Plan), Existing Holdings Preferred Equity, or Existing Holders Equity, and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

(b)    Notwithstanding such cancellation and discharge, the ABL Credit Agreement, the IPCo Indentures, the indentures for the 7.75%/8.50% Senior PIK Toggle Notes due 2022 and the Term Loan Agreement shall continue in effect solely to the extent necessary to (i) allow the holders of Allowed ABL Facility Claims, Allowed IPCo Claims, and Allowed Term Loans Claims to receive distributions under the Plan, (ii) allow the Reorganized Debtors, the ABL Agent, the Term Agent, the Indenture Trustees, and the Distribution Agent, as applicable, to make post-Effective Date distributions or to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims (including, if applicable, the right of the IPCo Trustees to exercise their respective charging lien), (iii) except as otherwise released, enjoined, or exculpated under the Plan, preserve their respective rights and obligations of the holders of such Claims vis-à-vis other holders of such Claims pursuant to any applicable documents, (iv) allow each of the ABL Agent, the Term Agent, and the Indenture Trustees to enforce its rights, claims, and interests vis-à-vis any non-Debtor, (v) preserve the rights of the ABL Agent and the Indenture Trustees to payment of fees and expenses, including in the exercise of its charging lien from any money or property distributable to the holders of the ABL Facility Claims or IPCo Notes Claims, and any rights to priority of payment, (vi) preserve the right of each Indenture Trustee to exculpation and indemnification from the Reorganized Debtors, (vii) allow the ABL Agent, the Term Agent, and the Indenture Trustees to enforce any obligations owed to them under the Plan, (viii) permit the ABL Agent, the Term Agent, and the Indenture Trustees to perform any function necessary to effectuate the foregoing, (ix) permit the ABL Agent, the Term Agent, and the Indenture Trustees to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court relating to the ABL Credit Agreement, the Indentures, or the Term Credit Agreement, as applicable, and (x) permit and require the ABL Agent, the Term Agent, and the Indenture Trustees to execute, deliver, and file any payoff or lien termination documentation requested by the Debtors in accordance with the ABL Credit Agreement, the Term Loan Agreement, or the Indentures (or any documents related thereto or otherwise delivered in connection therewith), as applicable; *provided* that nothing in this Section 5.9(b) shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Reorganized Debtors.

(c)    Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors of their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Section 5.9 shall be deemed null and void and shall be of no force and effect.

5.10.    **Cancellation of Liens**

Except as otherwise specifically provided in Section 5.9(b) of the Plan, upon the satisfaction of an Other Secured Claim, ABL Facility Claim, Term Loan Secured Claim, or IPCo Claim in accordance with the Plan, any Lien on the property securing such Claim shall be deemed automatically released and discharged without further action, and all of the right, title, and interest of any holder of such Lien, including any rights to any applicable Collateral, will revert to the applicable Reorganized Debtor and

WEIL:\97578913\4\54457.0008

its successors and assigns.  The holder of such Claim shall be directed to release any Collateral or other property of the Debtors held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.  The Reorganized Debtors also shall be authorized to execute and file on behalf of the holders of such Liens any instruments that may be necessary or appropriate to implement the provisions of this Section 5.10.  The Indenture Trustees will be authorized and directed to execute and deliver to the Reorganized Debtors, at the Reorganized Debtors' expense, any documents the Reorganized Debtors may request to evidence the cancellation of Liens and rights to Collateral securing the applicable claims.

5.11.   **Officers and Boards of Directors**

(a)     The identities of the members of the New Board and other boards of directors or managers of the Reorganized Debtors, and, to the extent applicable, the officers of each Reorganized Debtor, shall be disclosed at or before the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

(b)     Commencing on the Effective Date, each of the directors, managers, and officers of each of the Reorganized Debtors shall be elected and serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

5.12.   **Certain Employee, Director, and Officer Matters**

(a)     On the Effective Date, the Reorganized Debtors shall be deemed to have assumed all Benefit Plans and Employee Arrangements, other than those Executory Contracts that have been rejected by the Debtors or which are the subject of a pending rejection motion on the Confirmation Date; *provided that* notwithstanding anything to the contrary in the Employee Arrangements, the consummation of the Plan shall not be treated as a "change in control" or "change of control" or other similar transaction with respect to the Employee Arrangements.

(b)     For the avoidance of doubt, if a Benefit Plan or an Employee Arrangement is assumed, and such Benefit Plan or Employment Arrangement provides for an award or potential award of Existing Holdings Equity, such Benefit Plan or Employment Arrangement shall be assumed in all respects other than the provisions of such agreement relating to such award.

## ARTICLE VI      DISTRIBUTIONS.

6.1.   **Distributions Generally**

The Distribution Agent shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

Distributions to be made to holders of IPCo Notes Claims shall be made to the applicable IPCo Trustee, which, subject to their rights to assert their charging lien against distributions, shall transmit such distributions to holders of IPCo Notes Claims under their respective Indenture.  The IPCo Trustees may, with the consent of the Debtors and the Requisite Consenting Support Parties, establish a different record date for distributions to holders of IPCo Notes Claims and shall transfer or direct the transfer of such distributions through the facilities of DTC.  The Indenture Trustees shall be entitled to recognize and deal for all purposes under the Plan with holders of IPCo Notes Claims to the extent consistent with the customary practices of DTC, and all distributions to be made to holders of IPCo Notes Claims shall be

28

delivered to the IPCo Trustee in a form that is eligible to be distributed through the facilities of DTC. No later than five business days prior to the Effective Date, the Debtors shall provide the IPCo Trustees with written instructions by CUSIP number regarding the number of New Common Equity to be distributed to holders of IPCo Notes Claims.

6.2.    **Distribution Record Date**

As of the close of business on the Effective Date, the various lists of holders of Claims or Interests in each Class, as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any Claims or Interests. The Reorganized Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Effective Date. In addition, with respect to payment of any Cure Obligation or disputes over any Cure Obligation, neither the Reorganized Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Obligation.

6.3.    **Date of Distributions**

Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as otherwise determined in accordance with the Plan, including the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter; *provided* that the Reorganized Debtors may implement periodic distributions to the extent they determine it to be appropriate. If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day but shall be deemed to have been completed as of the required date. Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan.

6.4.    **Distribution Agent**

The Debtors and the Reorganized Debtors, as applicable, shall have the authority to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder. All distributions under the Plan shall be made by the Distribution Agent, on behalf of the applicable Debtor (unless otherwise provided herein), or by the Reorganized Debtors if no Distribution Agents are engaged, on or after the Effective Date. The Reorganized Debtors shall use all commercially reasonable efforts to provide the Distribution Agent (if other than the Reorganized Debtors) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtors' or the Reorganized Debtors' books and records. The Reorganized Debtors shall cooperate in good faith with the Distribution Agent (if other than the Reorganized Debtors) to comply with the reporting and withholding requirements outlined in Section 6.19 of the Plan.

6.5.    **Rights and Powers of Distribution Agent**

(a)    From and after the Effective Date, the Distribution Agent, solely in its capacity as Distribution Agent, shall be exculpated by all Entities, including holders of Claims and Interests and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Distribution Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Distribution Agent. No holder of a Claim or Interest or other party in interest

WEIL:\97578913\4\54457.0008

shall have or pursue any claim or Cause of Action against the Distribution Agent, solely in its capacity as Distribution Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Distribution Agent.

(b)     The Distribution Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all distributions provided for in the Plan, and (iii) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.

6.6.     **Expenses of Distribution Agent**

If the Distribution Agent is an Entity other than the Reorganized Debtors, and except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Distribution Agent acting in such capacity (including reasonable documented attorneys' fees, expenses, and taxes) on or after the Effective Date shall be paid in cash by the Reorganized Debtors in the ordinary course of business upon presentation of invoices to the Reorganized Debtors and without the need for approval by the Bankruptcy Court.

6.7.     **Postpetition Interest**

Except as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, interest shall not accrue or be paid on any Claims on or after the Petition Date, and no holder of a Claim shall be entitled to (a) interest accruing on or after the Petition Date on such Claim or (b) interest at the contract default rate.

6.8.     **Delivery of Distributions**

Subject to the provisions contained in this Article VI, the Distribution Agent will issue or cause to be issued, and authenticate, as applicable, all distributions or payments to holders of Allowed Claims, as and when required by the Plan at: (a) the address of such holder on the books and records of the Debtors or their agents; (b) the address included on any filed proofs of claim; or (c) the address in any written notice of address change delivered to the Debtors or indicated on any transfers of Claims filed with the Bankruptcy Court. If any distribution to any holder is returned as undeliverable, no further distributions shall be made to such holder unless and until the Distribution Agent is notified in writing of such holder's then-current address, at which time all then-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest. Nothing herein shall require the Distribution Agent or the Reorganized Debtors to attempt to locate holders of undeliverable distributions and, if located, assist such holders in complying with Section 6.19 of the Plan.

6.9.     **Distributions after Effective Date**

Distributions made after the Effective Date to holders of Disputed Claims that become Allowed Claims after the Effective Date shall be deemed to have been made on the Effective Date.

6.10.     **Unclaimed Property**

Undeliverable or unclaimed distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable or the holder accepts distribution, and shall not accrue interest, dividends, or other accruals of any kind. No further distributions shall be made to the

applicable holder unless and until the Distribution Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such holder within 90 days of receipt of such holder's then-current address or other necessary information.  Undeliverable or unclaimed distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (a) the Effective Date and (b) the date of the initial attempted distribution.  On such date, all unclaimed property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any other Entity to such property shall be discharged and forever barred.  The Reorganized Debtors and the Distribution Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and filings with the Bankruptcy Court.

### 6.11.  **Time Bar to Cash Payments**

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the date of issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check shall be made to the Distribution Agent by the holder of the Allowed Claim to whom such check was originally issued.

### 6.12.  **Manner of Payment under Plan**

Except as otherwise specifically provided in the Plan, at the option of the Reorganized Debtors, any cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.  The wire transfer fee will be deducted from the amount of the distribution to a holder of an Allowed Claim would otherwise receive.

### 6.13.  **Satisfaction of Claims**

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

### 6.14.  **Fractional Stock and New Warrants**

If any distribution of New Common Equity or exercise of New Warrants would result in the issuance of a fractional amount of New Common Equity, then the amount of New Common Equity to be issued in respect of such distribution or exercise, as applicable, shall be calculated to one decimal place and rounded up or down to the closest whole unit (with a half unit or greater rounded up and less than a half unit rounded down).  The total number of New Common Equity shall be adjusted as necessary to account for the rounding provided for herein.  No consideration shall be provided in lieu of fractional units that are rounded down. DTC is considered a single holder of New Common Equity for the rounding and distribution purposes.  Neither the Reorganized Debtors nor the Distribution Agent shall have any obligation to make a distribution that is less than one New Common Equity.

WEIL:\97578913\4\54457.0008

6.15.    **Minimum Cash Distributions**

The Distribution Agent shall not be required to make any distribution on account of an Allowed Claim that is less than $50; *provided* that if no distribution is made to a holder of an Allowed Claim pursuant to this Section 6.15, the amount of such distribution shall be added to any subsequent distribution(s) to such holder on account of such Allowed Claim until the distribution such holder is entitled to is $50 or higher.

6.16.    **Maximum Distributions and Rights of Reimbursement**

In no event shall an Allowed Claim receive distributions under the Plan in excess of the Allowed amount of such Claim, except to the extent postpetition interest is expressly Allowed by the Plan. Nothing contained herein shall in any way affect, impair or modify the rights of a holder of a claim against any Entity that is not a Debtor.

6.17.    **Setoffs and Recoupments**

The Debtors and the Reorganized Debtors, as applicable, or such Entity's designee (including the Distribution Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law; *provided*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or a Reorganized Debtor or its successor or assign of any claims, rights, or Causes of Action that a Debtor or a Reorganized Debtor or its successor or assign may possess against the holder of such Claim.

6.18.    **Allocation of Distributions between Principal and Interest**

Except as otherwise required by law (as reasonably determined by the Reorganized Debtors), distributions with respect to Allowed Claims in Classes 4, 5, 6-A, and 6-B shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.19.    **Withholding and Reporting Requirements**

(a)    Withholding Rights. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. In the case of a non-cash issuance or distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate cash necessary to pay over the withholding tax (or reimburse the distributing party for any advanced payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Entity, including income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

WEIL:\97578913\4\54457.0008

(b)      Forms.  Any party entitled to receive any property as an issuance or distribution under the Plan shall deliver to the withholding agent (which, if such withholding agent is not the Distribution Agent, shall subsequently deliver to the Distribution Agent) an appropriate Form W-9 or (if the payee is a foreign Entity) Form W-8 and any other forms or documents reasonably requested by any Reorganized Debtor to reduce or eliminate any withholding required by any federal, state, or local taxing authority.  If such request is made by the Reorganized Debtors, and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the applicable Reorganized Debtor or its property.

6.20.    **Hart-Scott-Rodino Antitrust Improvements Act**

Any New Common Equity or the New Warrants to be distributed to an Entity required to file a premerger notification and report form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, to the extent applicable, shall not be distributed until the notification and waiting periods applicable under such Act to such Entity have expired or been terminated.

## ARTICLE VII        PROCEDURES FOR DISPUTED CLAIMS.

7.1.    **Allowance of Claims**

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim until such Claim is deemed Allowed pursuant to the Plan, the Confirmation Order, or a Final Order.  All settlements approved pursuant to Bankruptcy Rule 9019 or otherwise before the Effective Date by an order of the Bankruptcy Court shall be binding on all parties.

7.2.    **Disputed Claims Process**

(a)      If a holder of a Claim elects to file a proof of claim, such holder shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to such Claim, and the Bankruptcy Court shall retain nonexclusive jurisdiction over all such Claims, which shall be resolved on a case-by-case basis through settlements, Claim objections (or, if necessary, through adversary proceedings), adjudication in a forum other than the Bankruptcy Court, or by withdrawal of the Claims by the holders of such Claims.

(b)      The Debtors and the Reorganized Debtors, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims; *provided* that, consistent with section 502(a) of the Bankruptcy Code, any party in interest is permitted to object to any proof of claim that is filed with the Bankruptcy Court.  Except for the Claims that are expressly Allowed by the Plan or a Final Order, all proofs of claim filed in these Chapter 11 Cases shall be considered Disputed Claims without further action by the Debtors.

(c)      Except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses the applicable Debtor had immediately before the Effective Date, including the Causes of Action retained pursuant to the Plan.  From and after the Effective Date, the Reorganized Debtors may satisfy, dispute, settle, or otherwise compromise any Claim without approval of the Bankruptcy Court.

WEIL:\97578913\4\54457.0008

7.3.    **Objections to Claims**

Only the Reorganized Debtors shall be entitled to object to Disputed Claims after the Effective Date.  Any objections to proofs of claim shall be served and filed (a) on or before 180 days following the later of (i) the Effective Date and (ii) the date that a proof of claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtors or the Reorganized Debtors. The expiration of such period shall not limit or affect the Reorganized Debtors' rights to dispute Claims asserted other than through a proof of claim.

7.4.    **Estimation of Claims**

The Debtors or the Reorganized Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. Notwithstanding any provision in the Plan to the contrary, a Claim that has been expunged but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.

7.5.    **Adjustment to Claims Without Objection**

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged without the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

7.6.    **Disallowance of Certain Claims**

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that are transferees of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code unless expressly Allowed pursuant to the Plan, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against such holders have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.

7.7.    **Amendment to Claims**

A Claim may not be filed, amended, or supplemented after the applicable bar date established by the Bankruptcy Court without the prior written authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new, amended, or supplemented Claim filed without such written authorization shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

WEIL:\97578913\4\54457.0008

7.8.  **Late Filed Claims**

Except as otherwise provided herein or as agreed to by the Debtors or the Reorganized Debtors, any proof of claim filed after the deadline established by the Bankruptcy Court with respect to such Claim shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late proof of claim has been deemed timely filed by a Final Order

7.9.  **No Distributions Pending Allowance**

If an objection, motion to estimate, or other challenge to a Claim is filed, no distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.10.  **Distributions after Allowance**

To the extent that a Disputed Claim ultimately becomes, in whole or in part, an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan, including the provisions of Article IV of the Plan.  Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.  In the event the Bankruptcy Court issues a Final Order deeming a Claim an Allowed Claim, the Distribution Agent shall remit for distribution to the holder of such Allowed Claim, the cash or cash equivalents in an amount equal to the amount that would have been distributed to the holder of such Claim from the Effective Date through and including the date of distribution had such Claim been Allowed as of the Effective Date.

7.11.  **Claim Resolution Procedures Cumulative**

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

## ARTICLE VIII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1.  **General Treatment**

(a)    Unless otherwise provided by an order of the Bankruptcy Court, at least 21 days before the Confirmation Hearing, the Debtors shall file or serve notices of proposed assumption and proposed Cure Obligations on counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan.  Any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed, served and actually received by the Debtors no later than seven days before the Confirmation Hearing, unless otherwise extended by the Debtors. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and the proposed Cure Obligations.

(b)    As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Obligation, all Executory Contracts and Unexpired Leases, which have not expired or terminated by their own terms on or before the Effective Date, shall be deemed assumed by the Reorganized

35

Debtors on the Effective Date, except for any Executory Contract or Unexpired Lease that (i) is listed on the Schedule of Rejected Contracts and Leases; (ii) has been previously rejected pursuant to a Final Order of the Bankruptcy Court (including where the effective date of such rejection is scheduled for after the Effective Date); (iii) has been previously assumed or assigned; or (iv) is the subject of a motion to assume, assign, or reject pending on the Effective Date; *provided* that the Debtors shall not reject, nor seek to reject, any Executory Contract or Unexpired Lease without the prior written consent of the Requisite Consenting Support Parties (such consent not to be unreasonably withheld).

In addition to the foregoing and subject to occurrence of the Effective Date and the payment of any applicable Cure Obligation, the Executory Contracts and Unexpired Leases of Debtors Chinos Holdings, Inc., Chinos Intermediate Holdings A, Inc., Chinos Intermediate, Inc., Chinos Intermediate Holdings B, Inc., and J. Crew Group, Inc. will be assigned to Debtor J. Crew Operating Corp. or an entity in the NewCo Entity Group designated by the Debtors, unless designated otherwise on the Schedule of Assigned Contracts and Leases.

(c)     Subject to the occurrence of the Effective Date, the payment of any applicable Cure Obligations, and resolution of any Assumption Dispute in accordance with Section 8.2 of the Plan, entry of the Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumptions, assignments, or rejections, as applicable, of the Executory Contract and Unexpired Lease in accordance with Section 8.1(b) of the Plan and a determination by the Bankruptcy Court that the Reorganized Debtors have provided adequate assurance of future performance under each assumed Executory Contract and Unexpired Lease.   Each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by any order of the Bankruptcy Court authorizing and providing for its assumption or assignment.   To the extent that any provision in any Executory Contract or Unexpired Lease assumed or assigned pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by the assumption or assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), such provision shall be deemed modified such that the assumption or assignment contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

### 8.2.   **Determination of Assumption Disputes and Deemed Consent**

(a)     Any Cure Obligation due under an Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in cash on the Effective Date, subject to the limitation described below, by the applicable Reorganized Debtor, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

(b)     In the event of an Assumption Dispute regarding (i) the amount of the Cure Obligation, (ii) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or (iii) any other matter pertaining to the assumption of an Executory Contract or Unexpired Lease, sections 365 and 1123 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; *provided that* the Reorganized Debtors may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(c)     After resolution of an Assumption Dispute by Final Order of the Bankruptcy Court or by the parties, the applicable Executory Contract or Unexpired Lease shall be deemed assumed effective

WEIL:\97578913\4\54457.0008

as of the Effective Date; *provided that* if any Assumption Dispute is resolved unfavorably to the Reorganized Debtors, including a determination that the Claim subject to such Assumption Dispute is Allowed in an amount greater than the Cure Obligation for such Claim asserted by the Debtors or the Reorganized Debtors, the applicable Debtor may reject the applicable Executory Contract or Unexpired Lease by filing a notice indicating such rejection with the Bankruptcy Court, and any such rejection shall be effective as of the Effective Date.

(d)     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, subject to satisfaction of the applicable Cure Obligation, shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under such assumed Executory Contract or Unexpired Lease at any time before the effective date of its assumption.  Any Claim set forth in the Schedules or any proofs of claim with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

(e)     With respect to any Assumption Dispute, neither the Reorganized Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred such Executory Contract or Unexpired Lease or its Claim thereunder.

### 8.3.    **Rejection of Executory Contracts and Leases**

(a)     Unless otherwise provided by an order of the Bankruptcy Court, any proofs of claim based on the rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise must be filed with Bankruptcy Court and served on the Debtors or Reorganized Debtors, as applicable, no later than 30 days after the later of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease.

(b)     Claims arising from the rejection of Executory Contracts and Unexpired Leases, to the extent Allowed, shall be Other General Unsecured Claims in Class 6-B.

(c)     Each holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease for which a proof of claim was not timely filed as set forth in Section 8.3(a) above shall not be treated as a creditor with respect to such Claim, and any such Claim will be automatically Disallowed without the need for any objection or further notice to, or action, order, or approval of the Bankruptcy Court.

(d)     The Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of all Executory Contracts and Unexpired Leases identified on the Schedule of Rejected Contracts and Leases, to the extent not already rejected by prior orders of the Bankruptcy Court.  Any Executory Contract or Unexpired Lease that is rejected will comply with the procedures set forth in the *Order Authorizing Debtors to (I) Establish Procedures for Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith and (II) Granting Related Relief* [Docket No. 118] unless the Plan provides otherwise.

### 8.4.    **Contracts and Leases Entered into After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor, will be performed by the applicable Debtor or

WEIL:\97578913\4\54457.0008

Reorganized Debtor in the ordinary course of its business. Accordingly, such contracts and leases will remain unaffected by entry of the Confirmation Order and the occurrence of the Effective Date.

8.5. **Modifications, Amendments, Supplements, Restatements, or Other Agreements**

(a)   Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including any easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.

(b)   Unless otherwise provided in an order entered by the Bankruptcy Court, modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of such Executory Contracts or Unexpired Leases, or the validity, priority, or amount of any Claims that may arise in connection therewith.

8.6. **Survival of the Debtors' Indemnification Obligations**

Any obligations of the Debtors pursuant to their corporate charters, bylaws, limited liability company agreements, or other organizational documents to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, or employees, based upon any act or omission for or on behalf of the Debtors, shall not be discharged or impaired by confirmation of the Plan. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors. Any Claim based on such obligations shall not be a Disputed Claim or subject to any objection by reason of section 502(e)(1)(B) of the Bankruptcy Code. The Debtors and the Reorganized Debtors, as applicable, shall not amend or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

8.7. **Insurance Policies**

All insurance policies (including all directors' and officers' insurance policies, any extended discovery provisions thereunder, and tail coverage liability insurance policies), related agreements, endorsements, addenda, schedules, documents or instruments related thereto pursuant to which any Debtor has any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts under the Plan and shall be assumed by, and vest in, the applicable Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms. All members, managers, directors, and officers who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any directors' and officers' insurance policies (including any "tail policy" and extended discovery provisions of any insurance policies) for the full term of such policies regardless of whether such members, managers, directors, or officers remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.

8.8. **Intellectual Property Licenses and Agreements**

All intellectual property contracts, licenses, royalties, or other similar agreements under which the Debtors have any rights or obligations as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts under the Plan, shall be assumed by, and vest in, the applicable Reorganized Debtors on the Effective Date, and shall continue in full force and effect unless any such

WEIL:\97578913\4\54457.0008

intellectual property contract, license, royalty, or other similar agreement is rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors in accordance with Section 8.1 of the Plan. The Reorganized Debtors may take all actions as may be necessary or appropriate to ensure the vesting of such intellectual property contracts, licenses, royalties, or other similar agreements as contemplated herein.

8.9.    **Employee Compensation and Benefits**

Except as listed in the Schedule of Rejected Contracts and Leases, all Benefit Plans and Employee Arrangements shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. The Reorganized Debtors shall honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising before the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. Any assumption of the Benefit Plans and Employee Arrangements hereunder shall not trigger any applicable change of control, immediate vesting, termination, or similar provisions therein. No participant shall have rights under the Benefit Plans and Employee Arrangements assumed pursuant to the Plan other than those existing immediately before such assumption.

8.10.    **Assignment**

To the extent any Executory Contract or Unexpired Lease is transferred or assigned hereunder, it shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including, those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

8.11.    **Reservation of Rights**

(a)    Neither the exclusion nor inclusion of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will waive, exclude, limit, dismiss or otherwise alter any of the defenses, claims, causes of action, or other rights of the Debtors or Reorganized Debtors to subsequently argue that such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors or their respective affiliates do not have any liability thereunder.

(b)    Except as otherwise provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors and the Reorganized Debtors under any executory or non-executory contract or any unexpired or expired lease.

(c)    Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors under any executory or non-executory contract or any unexpired or expired lease.

39

(d)     If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under the Plan, the Debtors shall have 60 days following entry of a Final Order resolving such dispute to alter the proposed treatment of such contract or lease.

## ARTICLE IX     CONDITIONS PRECEDENT

9.1.   **Conditions Precedent to Confirmation of the Plan**

The following are conditions precedent to confirmation of the Plan:

(a)     the Bankruptcy Court shall have entered an order approving the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code;

(b)     the proposed Confirmation Order shall be consistent with the Transaction Support Agreement and otherwise in form and substance reasonably satisfactory to the Debtors, the Requisite Consenting Support Parties, the Required DIP Lenders, the DIP Agent, the Exit ABL Agent, and the Exit Term Agent; *provided that* the Debtors will also consult in good faith with the ABL Agent regarding the form and substance of the Confirmation Order; and

(c)     the Backstop Commitment Letter and the Transaction Support Agreement shall not have been terminated by the parties thereto and shall be in full force and effect and binding on all parties thereto.

9.2.   **Conditions Precedent to Effective Date**

The occurrence of the Effective Date will be subject to the following conditions precedent, among others; *provided that* any condition can be waived with the prior written consent of the Debtors and the Requisite Consenting Support Parties:

(a)     the Transaction Support Agreement shall not have been terminated by the parties thereto and remains in full force and effect and binding on the parties thereto;

(b)     the Bankruptcy Court shall have entered the Confirmation Order consistent with the Transaction Support Agreement and the Confirmation Order shall not have been stayed;

(c)     the Definitive Documents shall be consistent with the Transaction Support Agreement and otherwise approved by the parties thereto consistent with their respective consent and approval rights as set forth in the Transaction Support Agreement;

(d)     all actions, documents, and agreements necessary to implement and consummate the Plan shall have been performed or executed, as applicable;

(e)     the Bankruptcy Court shall have entered the Final DIP Order, the DIP Loan Documents shall be in full force and effect in accordance with their terms, the DIP Termination Date (as defined in the DIP Orders) shall not have occurred, no Event of Default (as defined in the DIP Loan Documents) shall have occurred or be continuing, and the obligations outstanding under the DIP Credit Agreement shall not have been accelerated in accordance with the terms thereof;

(f)     all documentation related to the Exit ABL Facility shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived;

(g)      all documentation related to the New Term Credit Agreement shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived; *provided* that the DIP Lenders shall be deemed to have executed and delivered the New Term Credit Agreement in accordance with the terms of the DIP Credit Agreement;

(h)      all conditions precedent to the issuance of the New Common Equity, other than the occurrence of the Effective Date, shall have occurred;

(i)      the New Equity Allocation and New Warrants shall have been issued to the Consenting Support Parties in accordance with the Transaction Support Agreement;

(j)      the organizational documents for NewCo Holdings will be adopted on terms consistent with the Transaction Support Agreement and otherwise in form and substance reasonably satisfactory to the Debtors and the Requisite Consenting Support Parties;

(k)      the Backstop Commitment Letter shall not have been terminated and remains in full force and effect;

(l)      the Professional Fee Escrow Account shall have been established and funded as provided herein;

(m)      all fees and expenses owed pursuant to the Transaction Support Agreement or the DIP Order, including all Ad Hoc Committee Fees, to the extent unpaid and invoiced at least two business days before the Effective Date, shall have been paid by the Debtors or the Reorganized Debtors;

(n)      all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Transaction Support Agreement shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

(o)      all other actions, documents, and agreements necessary to implement and effectuate the Plan shall have been performed or executed, as applicable.

9.3.    **Satisfaction or Waiver of Conditions Precedent**

(a)      Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred before the taking of any other such action.  No leave or order of the Bankruptcy Court shall be required for the waiver by the Debtors, with the prior written consent of the Requisite Consenting Support Parties, of any condition precedent set forth in Section 9.1 of the Plan, except the condition precedent set forth in Section 9.1(a), in accordance with the terms thereof.

(b)      The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e), 6004(h), and 7062.

9.4.    **Effect of Failure of a Condition**

If the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired

41

Leases effected under the Plan, and document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claim or Interest or any claims or Causes of Action by the Debtors, (ii) prejudice in any manner the rights of any Entity, or (iii) constitute any admission, acknowledgement, offer, or undertaking by the Debtors, any of the Consenting Support Parties, or any other Entity.

## ARTICLE X        EFFECT OF CONFIRMATION OF PLAN.

### 10.1.   Vesting of Assets

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all assets and property of the Debtors' Estates shall vest in the Reorganized Debtors, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or the Confirmation Order.  On and after the Effective Date, the Reorganized Debtors may take any action, including, the operation of their businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending cases under the Bankruptcy Code, except as expressly provided herein.

### 10.2.   Binding Effect

As of the Effective Date, the Plan shall bind (a) all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, (b) each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases, (c) all parties to the Transaction Support Agreement, and (d) all holders of Claims and Interests and their respective successors and assigns, notwithstanding whether any such holders were (i) Impaired or Unimpaired under the Plan, (ii) deemed to accept or reject the Plan, (iii) failed to vote to accept or reject the Plan, or (iv) voted to reject the Plan.

### 10.3.   Compromise and Settlement of Claims, Interests, and Controversies

(a)     Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, distributions, releases, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

(b)     The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  The compromises, settlements, and releases described herein shall be deemed nonseverable from one another and from all other provisions of the Plan.

### 10.4.   Discharge of Claims and Termination of Interests

Upon the Effective Date, in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any representatives, trustees, or agents on

behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose before the Effective Date.  Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Interests and Claims of any nature whatsoever, including (unless otherwise specifically provided herein) any interest accrued on Claims from and after the Petition Date, whether known or unknown, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a proof of claim or interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest is Allowed; or (c) the holder of such Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.  Upon the Effective Date, all holders of Interests and Claims of any nature whatsoever shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim or terminated Interest against the Debtors, the Reorganized Debtors, or any of their assets or property, whether or not such holder has filed a proof of claim and whether or not the facts or legal bases therefor were known or existed before the Effective Date.

10.5.  **Term of Injunctions or Stays**

Unless otherwise provided herein, in the Confirmation Order, or in another Final Order of the Bankruptcy Court, all injunctions or stays arising or issued under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.6.  **Injunction**

(a)    **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.**

(b)    **Except as expressly provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or agreed to by the Debtors and a holder of a Claim or Interest, all Entities who have held, hold, or may hold Claims or Interests (whether or not proof of such claims or interests has been filed and whether or not such Entities voted for or against the Plan or abstained from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to the Claims, Interests, and Causes of Action that are extinguished, discharged, or released pursuant to the Plan, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or**

WEIL:\97578913\4\54457.0008

indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated by the Plan, and (v) acting in any manner that does not conform to or comply with the provisions of the Plan or the Confirmation Order.

(c)      By accepting distributions under the Plan, each holder of an Allowed Claim extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Section 10.6.

(d)      The injunctions in this Section 10.6 shall extend to any successors of the Debtors and the Reorganized Debtors and their respective property and interests in property.

10.7.  **Releases**

(a)      **Releases by Debtors**

As of the Effective Date, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Entity seeking to exercise the rights of the foregoing, including any successors to the Debtors or any estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, their Estates, or the Reorganized Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, their Estates, the Reorganized Debtors, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their Estates, the formation, operation, and conduct of the Debtors' businesses, the Chapter 11 Cases, the acquisition, purchase, sale, or rescission of the purchase or sale of any debt or security of the Debtors or the Reorganized Debtors (including the New Equity Allocation and the New Warrants), the subject matter of, or the transactions or events giving rise to, any Claim or Interest, the business or contractual arrangements between the Debtors and any Released Party, the Debtors' restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases (including the restructuring of the IPCo Notes Claims notwithstanding the separate nature of the IPCo Indentures or the IPCo Intercreditor Agreement), the DIP Order, the Disclosure Statement, the Transaction Support Agreement, the New Term Loan, the Backstop Commitment, the Backstop Commitment Letter, the Plan, the Plan Supplement and other related agreements, instruments, and documents related to the foregoing (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes on the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Claims and Causes of Action under chapter 5 of the Bankruptcy Code or any other Avoidance Actions under the Bankruptcy Code or applicable federal or state law, including any preference or fraudulent transfer Claims or Causes of Action; *provided that* nothing in this release shall be construed to release any post-Effective Date obligations of any Entity under the Plan, the Transaction Support Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

44

(b)    **Consensual Releases by Holders of Claims and Interests**

As of the Effective Date, for good and valuable consideration, on and after the Effective Date, each of the Released Parties shall be deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by:

i.    the other Released Parties;

ii.    the holders of Impaired Claims who voted to accept the Plan;

iii.    the holders of Impaired Claims who abstained from voting on the Plan or voted to reject the Plan but did not opt-out of these releases on their ballots;

iv.    the holders of Unimpaired Claims and Interests in Classes 1, 2, 3, 7, and 9 that are presumed to accept the Plan but do not timely opt-out of the releases by completing a written opt-out form; and

v.    the holders of Impaired Claims and Interests in Classes 8, 10-A, and 10-B, that are deemed to reject the Plan but do not timely opt-out of the releases by completing a written opt-out form;

and with respect to any Entity in the foregoing clauses (i) through (iv), (a) such Entity's predecessors, successors, and assigns, and (b) all Entities entitled to assert Claims through or on behalf of such Entities with respect to the matters to which these releases apply, in each case, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates, the formation, operation, and conduct of the Debtors' businesses, the Chapter 11 Cases, the acquisition, purchase, sale, or rescission of the purchase or sale of any debt or security of the Debtors or the Reorganized Debtors (including the New Equity Allocation and New Warrants), the subject matter of, or the transactions or events giving rise to, any Claim or Interest, the business or contractual arrangements between the Debtors and any Released Party, the Debtors' restructuring (including the restructuring of the IPCo Notes Claims notwithstanding the separate nature of the IPCo Indentures or the IPCo Intercreditor Agreement), the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the DIP Order, the Disclosure Statement, the Transaction Support Agreement, the New Term Loan, the Backstop Commitment, the Backstop Commitment Letter, the Plan, the Plan Supplement, and related agreements, instruments, and other documents (including the Definitive Documents), and the negotiation, formulation, or preparation thereof, the solicitation of votes on the Plan, or any other act or omission, in all cases based upon any transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Claims and Causes of Action under chapter 5 of the Bankruptcy Code or any other Avoidance Actions under the Bankruptcy Code or applicable federal or state law, including any preference or fraudulent transfer Claims or Causes of Action; *provided* that nothing in this release shall be construed to release any post-Effective Date obligations of any Entity under the Plan, the Transaction Support Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

(c)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the compromises memorialized in the releases set

forth herein, and shall constitute the Bankruptcy Court's finding that the releases set forth in the Plan are: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims released; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; and (g) given and made after due notice and opportunity for hearing.

10.8.    **Exculpation**

Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases, the formulation, preparation, and pursuit of the Disclosure Statement, the Transaction Support Agreement, the transactions relating to the Debtors' restructuring, the Plan (including the Plan Supplement), the solicitation of votes for, or confirmation of, the Plan, the funding or consummation of the Plan, the Definitive Documents, or any related agreements, instruments, or other documents, the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan, whether or not such distribution occurs following the Effective Date, the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed under the Plan, except for actions determined to constitute gross negligence, willful misconduct, or intentional fraud as determined by a Final Order by a court of competent jurisdiction. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability.

10.9.    **Retention of Causes of Action/Reservation of Rights**

Except as otherwise provided in Section 10.7(a) of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including any affirmative Causes of Action against any parties other than the Released Parties. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors shall not retain any claims or Causes of Action against any of the Released Parties released pursuant to the Plan (except that such claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation procedures).

10.10.    **Ad Hoc Committee and Indenture Trustee Fees**

On the Effective Date, the Debtors shall pay all Ad Hoc Committee Fees and Indenture Trustee Fees in cash to the extent not already paid by the Debtors subject to receipt by the Debtors of an invoice from any Entity entitled to Ad Hoc Committee Fees or Indenture Trustee Fees and in accordance with the applicable engagement letter, the applicable governing documents, or as otherwise agreed between the Debtors and such Entity. On and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall pay all Ad Hoc Committee Fees and Indenture Trustee Fees in cash, to the extent not

46

already paid by the Debtors, in each case, within ten business days of receipt by the Debtors or the Reorganized Debtors, as applicable, of an invoice from any Entity entitled to Ad Hoc Committee Fees or Indenture Trustee Fees for any unpaid fees in accordance with the applicable engagement letter, the applicable governing documents, or as otherwise agreed between the Debtors or Reorganized Debtors, as applicable, and such Entity.

## ARTICLE XI      RETENTION OF JURISDICTION.

### 11.1.  **Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising under, or arising in, or relating to these Chapter 11 Cases to the fullest extent legally permissible by 28 U.S.C. § 1334 to hear, and by 28 U.S.C. § 157 to determine, all proceedings in respect thereof, including, without limitation, for the following purposes:

(a)      to hear and determine matters relating to the assumption or rejection of Executory Contracts or Unexpired Leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)      to determine any motion, adversary proceeding, application, and contested matter pending on or commenced after the Confirmation Date, including any proceeding with respect to a Cause of Action;

(c)      to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and the Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)      to resolve disputes concerning Disputed Claims and consider the allowance, classification, priority, compromise, estimation, secured or unsecured status, amount, or payment of any Claim, including any Administrative Expense Claims, including any dispute over the application to any Claim of any limitation on its allowance set forth in sections 502 or 503 of the Bankruptcy Code or asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code;

(e)      to enter, implement, or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, and any other order of the Bankruptcy Court;

(g)      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order;

(h)      to hear and determine all Professional Fee Claims;

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Confirmation Order, any transactions or payments contemplated herein, or any agreement, instrument, or other document governing or relating to any of the foregoing, including, without limitation, the Transaction Support Agreement and the Backstop

WEIL:\97578913\4\54457.0008

Commitment Letter; *provided*, for the avoidance of doubt, that any dispute arising after the Effective Date under or with respect to the Exit Facility Documents, the New Organizational Documents, or any other documents entered into by the Reorganized Debtors shall be adjudicated in accordance with the terms of such documents;

(j)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(k)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(m)    to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, the releases, discharge, exculpations, and injunctions issued thereunder;

(n)    to enforce all orders previously entered by the Bankruptcy Court;

(o)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code, including in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any document related to the foregoing;

(p)    to enter a final decree closing the Chapter 11 Cases;

(q)    to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(r)    to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(s)    to hear any other matter not inconsistent with the Bankruptcy Code.

### 11.2.    **Courts of Competent Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### ARTICLE XII      MISCELLANEOUS PROVISIONS.

### 12.1.    **Substantial Consummation of the Plan**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.2.   **Expedited Determination of Taxes**

The Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods of the Debtors through the Effective Date.

12.3.   **Dissolution of Committees**

On the Effective Date, the Creditors' Committee and any other official committees appointed in these Chapter 11 Cases will dissolve; *provided* that, after the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Professional Fee Claims or applications filed by the committee, and any relief related thereto, for compensation by Professionals and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeal to which the committee is a party.  Upon the dissolution of the Creditors' Committee, the Creditors' Committee, its members, and the Committee's Professionals will cease to have any duty, obligation, or role arising from or related to these Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases.

12.4.   **Exemption from Certain Transfer Taxes**

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities or instruments hereunder, (b) the creation, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (c) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of Collateral under the Exit Facility Documents, (e) any assumption, assignment, or sale of interests in Unexpired Leases or Executory Contracts pursuant to section 365 of the Bankruptcy Code and (f) the issuance, renewal, modification, or securing of indebtedness in furtherance of, or in connection with, the Plan, including the Confirmation Order, and in each case whether by the Debtors or the Reorganized Debtors, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to or taxed under any law imposing any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or Governmental Entity in which any such instrument is to be recorded shall be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.5.   **Modifications and Amendments**

(a)     Subject to the terms of the Transaction Support Agreement, (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify or supplement the Plan before the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code and (ii) after entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify, or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without

49

additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Code may otherwise direct.

(b)     Subject to the Transaction Support Agreement, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Interests hereunder, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court; *provided*, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests and that any such technical adjustment or modification is consistent with the Transaction Support Agreement.

(c)     Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of votes thereon are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 12.6.    **Revocation or Withdrawal of Plan**

Subject to the terms of the Transaction Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan before the Effective Date as to any or all of the Debtors.  If, subject to any consent required under the Transaction Support Agreement, the Plan has been revoked or withdrawn with respect to any Debtor before the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing of or limiting an amount of any Claim or Interest or Class of Claims or Interests), assumption of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or Interest in, such Debtor (ii) constitute a waiver or release of any claim of any other Entity, (iii) prejudice in any manner the rights of such Debtor or any other Entity, or (iii) constitute an admission of any sort with respect to such Debtors by any other Debtor, any Consenting Support Party, or any other Entity.

### 12.7.    **Severability of Plan Provisions**

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, in each case at the election and the request of the Debtors with the consent of the Requisite Consenting Support Parties, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be), and (c) nonseverable and mutually dependent.

WEIL:\97578913\4\54457.0008

12.8.    **Governing Law**

Except if the Bankruptcy Code or other U.S. federal law is applicable, or if an exhibit or schedule hereto, or a document in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws there of; *provided* that corporate or entity governance matters relating to a Debtor or a Reorganized Debtor shall be governed by the laws of the state of incorporation or organization of the Debtors or the Reorganized Debtors.

12.9.    **Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10.    **Dates of Actions to Implement the Plan**

If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding business day, but shall be deemed to have been completed as of the required date.

12.11.    **Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtors.

12.12.    **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or permitted assign, if any, of such Entity.

12.13.    **Entire Agreement**

Except as provided in the Transaction Support Agreement, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.14.    **Exhibits to Plan**

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.15. **Notices**

        To be effective, all notices, requests, and demands to or upon the Debtors, the Creditors' Committee, the Ad Hoc Committee, or other notice parties shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

     (a)     if to the Debtors or the Reorganized Debtors:

         225 Liberty Street, 17th Floor
         New York, NY 10281
         Attn: Maria DiLorenzo

            -and-

         Weil, Gotshal & Manges LLP
         767 Fifth Avenue
         New York, New York 10153
         Attn:   Ray C. Schrock, P.C. (ray.schrock@weil.com)
                 Ryan Preston Dahl, Esq. (ryan.dahl@weil.com)
                 Candace M. Arthur, Esq. (candace.arthur@weil.com)
                 Daniel Gwen, Esq. (daniel.gwen@weil.com)

            -and-

         Hunton Andrews Kurth LLP
         Riverfront Plaza, East Tower
         951 East Byrd Street
         Richmond, Virginia 23219
         Attn:   Tyler P. Brown, Esq. (tpbrown@HuntonAK.com)
                 Henry P. (Toby) Long, III, Esq. (hlong@HuntonAK.com)
                 Nathan Kramer, Esq. (nkramer@HuntonAK.com)

     (b)     if to the Creditors' Committee:

         Pachulski Stang Ziehl & Jones LLP
         780 Third Avenue, 34th Floor
         New York, New York 10017
         Attn:   Bradford J. Sandler, Esq. (bsandler@pszjlaw.com)
                 Robert J. Feinstein, Esq. (rfeinstein@pszjlaw.com)
                 Shirley S. Cho, Esq. (scho@pszjlaw.com)
                 Debra Grassgreen, Esq. (dgrassgreen@pszjlaw.com)

            -and-

         Hirschler Fleischer, P.C.
         The Edgeworth Building
         2100 East Cary Street
         Richmond, Virginia 23223
         P.O. Box 500

WEIL:\97578913\4\54457.0008

Attn:    Robert S. Westermann (rwestermann@hf-law.com)

(c)       If to the Ad Hoc Committee:

Milbank LLP
55 Hudson Yards
New York, New York 10001
Attn:    Dennis F. Dunne, Esq. (ddunne@milbank.com)
          Samuel A. Khalil, Esq. (skhalil@milbank.com)
          Matthew L. Brod, Esq. (mbrod@milbank.com)

-and-

Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
Attn:    Lynn L. Tavenner, Esq. (LTavenner@Tb-Lawfirm.com)
          Paula S. Beran, Esq. (pberan@Tb-Lawfirm.com)

After the occurrence of the Effective Date, the Reorganized Debtors have authority to send notice to all parties in interest that to continue to receive documents pursuant to Bankruptcy Rule 2002, such parties must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the occurrence of the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed such renewed requests.

WEIL:\97578913\4\54457.0008

Dated:   August 9, 2020

Respectfully submitted,

**Chinos Holdings, Inc. and Its Debtor Affiliates**

By:  */s/ Michael Nicholson*
       Name: Michael Nicholson
       Title:   Authorized Signatory